NATIONAL POST OFFICE MAILHANDLERS, WATCHMEN, MESSENGERS AND GROUP LEADERS DIVISION, LABORERS INTERNATIONAL UNION OF NORTH AMERICA, AFL–CIO, and its Amalgamated Local # 304, Plaintiffs-Appellants,

v.

UNITED STATES POSTAL SERVICE, and William F. Bolger, Postmaster General, Defendants-Appellees.

No. 83–3612.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 3, 1984.

Decided Jan. 3, 1985.

**836**

David M. Cook (argued), Cincinnati, Ohio, for plaintiffs-appellants.

Robert A. Behlen, Jr., Asst. U.S. Atty., Cincinnati, Ohio, Nancy T. Forden (argued), USPS Headquarters, Washington, D.C., for defendants-appellees.

Before STEWART, Associate Justice (Retired) * and ENGEL and MERRITT, Circuit Judges.

STEWART, Justice (Retired).

Appellants are a national labor union which is party to a collective bargaining agreement with the United States Postal Service, and a local of the national union located in Ohio. For convenience, appellants hereinafter will be referred to collectively as "the union." In 1982, the Union filed suit to obtain review of two arbitration decisions concerning disciplinary actions taken by the Postal Service against an employee who was charged with, and subsequently pleaded guilty to, trafficking in marijuana. After holding an evidentiary hearing, the District Court ruled, contrary to the Union's contentions, that the Postal Service had complied with the initial arbitration award in favor of the employee, and that the second arbitration decision upholding the subsequent discharge of the employee should be sustained. On appeal, the Union seeks reversal of both rulings.

**I**

On November 30, 1980, the employee was arrested and charged with aggravated trafficking in marijuana in violation of Ohio criminal law. On December 4, however, a magistrate dismissed the charges against the employee, apparently because the results of chemical testing performed on certain seized materials were unavailable. Also on December 4, the employee received a letter from the Postal Service dated December 3, 1980, notifying him that he would be suspended indefinitely from his job no sooner than seven days after December 4, "pending investigation" of the arrest and attendant circumstances. The notice stated that "[t]here is reasonable cause to believe that you are guilty of a crime for which a sentence of imprisonment can be imposed." Despite the employee's response to this letter, stating that the charges had been dropped and that he was innocent, the Postal Service effected the employee's indefinite suspension on December 17, 1980, thirteen days after his receipt of the notice. The Postal Service did not interview the employee prior to taking this action.

The employee then filed a grievance pursuant to the collective bargaining agreement (hereinafter the agreement) protesting his suspension. Article XVI of the agreement provides in relevant part as follows:

> **Section 3. Suspensions of More Than 30 Days or Discharge.** In the case of suspensions of more than thirty (30) days, or of discharge, any employee shall, unless otherwise provided herein, be entitled to advance written notice of the charges against him/her and shall remain either on the job or on the clock at the option of the Employer for a period of thirty (30) days. .... When there is reasonable cause to believe an employee is guilty of a crime for which a sentence of imprisonment can be imposed, the Employer is not required to give the employee the full thirty (30) days' advance written notice in a discharge action but shall give such lesser number of days advance written notice as under the circumstances is reasonable and can be justified. The employee is immediately

* The Honorable Potter Stewart, Associate Justice (Retired) of the United States Supreme Court, sitting by designation.

removed from a pay status at the end of the notice period.

### Section 4. Indefinite Suspension— Crime Situation.

A. The employer may indefinitely suspend an employee in those cases where the Employer has reasonable cause to believe an employee is guilty of a crime for which a sentence of imprisonment can be imposed. In such cases, the Employer is not required to give the employee the full thirty (30) days' advance notice of indefinite suspension, but shall give such lesser number of days of advance written notice as under the circumstances is reasonable and can be justified. The employee is immediately removed from a pay status at the end of the notice period.

B. The just cause of indefinite suspension is grievable. The arbitrator shall have the authority to reinstate and make the employee whole for the entire period of the indefinite suspension.

. . . .

D. The Employer may take action to discharge an employee during the period of indefinite suspension whether or not the criminal charges have been resolved, and whether or not such charges have been resolved in favor of the employee. Such action must be for just cause, and is subject to the requirements of Section 3 of this Article.

If an employee grievance proceeds to arbitration, Article XV of the agreement provides in Section 4(A)(6) that:

All decisions of an arbitrator shall be final and binding. All decisions of arbitrators shall be limited to the terms and provisions of this Agreement, and in no event may the terms and provisions of this Agreement be altered, amended or modified by an arbitrator.

After proceeding through various preliminary steps, the employee's suspension grievance proceeded to an arbitration hearing held in March 1981 before an arbitrator named Seidman. On May 21, Seidman issued a decision setting aside the employee's suspension. Seidman interpreted the agreement to require that before the Postal Service can suspend an employee based on criminal charges alone, the Postal Service "must make its own independent investigation" of the charges. Absent such an independent investigation, Seidman held that the fact of arrest followed by dismissal of criminal charges and a protestation of innocence was "insufficient information" on which to base the suspension. Seidman therefore ordered that the employee be "reinstated to his former position in the Columbus Post Office" with back pay. While noting that the Postal Service was not barred from taking further action against the employee after an independent investigation and evaluation of the charges, Seidman stated that any such investigation "shall include" an arrangement to personally interview the employee.

Neither party sought immediate review of the Seidman award. In the meantime, on February 18, 1981, a grand jury had indicted the employee for trafficking in marijuana based on the same events that had led to his original arrest.[1] The Postal Service therefore did not permit the employee to return to his position in the Columbus Post Office after the Seidman award, but instead placed him on "administrative leave" at his normal pay rate.

Then, on July 1, 1981, the Postal Service sent the employee a notice that he would be discharged no sooner than seven days after his receipt of the notice. The notice again stated that "[t]here is reasonable cause to believe that you are guilty of a crime for

---

1. The Ohio statute entitled "Trafficking in drugs" (Ohio Rev.Code Ann. § 2925.03 (Page ed. 1982)) provides for various degrees of criminal conduct within that general category of offenses. The record is not clear as to whether the indictment charged the employee with the same degree of trafficking as the original charge that had been dismissed, or with a lesser degree.

It is clear that the employee subsequently pleaded guilty to a lesser degree, and was sentenced to probation. The record also indicates that the precise facts surrounding the arrest and the offense to which the employee pleaded guilty are apparently still in some dispute. Because they are irrelevant to this appeal, we do not attempt to divine them.

which a sentence of imprisonment can be imposed." The notice also recited the prosecutor's version of the events that had led to the employee's arrest. The employee's discharge actually became effective on July 21, 1981, seventeen days after his receipt of the notice.

The employee and the Union then pursued a second grievance to arbitration, this time protesting the discharge. A different arbitrator named Haber held an evidentiary hearing on this grievance on February 19, 1982. The Union now contends that this hearing was unfair due to the arbitrator's "misconduct," which the Union alleges consisted of placing unreasonable time restrictions on the length of the hearing, refusing to allow some Union witnesses to testify, and "dozing" during the Union's presentation. No verbatim record that might shed clear light on these allegations was kept of the Haber arbitration hearing.

On March 23, 1982, Haber issued a decision refusing to vacate the discharge. He admitted that he was troubled by various "procedural shortcomings" in the Postal Service's actions, and he stated that the Postal Service's failures to give the employee thirty days notice or to personally interview the employee and conduct a "thorough investigation before initiating discipline" constituted "serious error[s]." Haber was "reluctant" to decide the case on these procedural errors, however, because of his view of the seriousness of the employee's alleged criminal misconduct.

Haber then went on to sustain the discharge. His written decision contains a few factual errors, including the glaring misstatement that the employee had pleaded guilty to marijuana trafficking on February 19, 1981, prior to the Postal Service's discharge action. Of course that was actually the date on which the employee had been indicted; he did not plead guilty until August 20, 1981, approximately four weeks *after* the discharge became final. Haber's decision also apparently misstates that cer-tain witnesses testified on behalf of the employee when in fact Haber had barred their testimony at the hearing.

On the merits of whether there was "just cause" for the discharge, Haber admitted to having "doubts" concerning the events upon which the Postal Service had relied for its discharge action. Haber concluded, however, that his doubts were "resolved by the fact that the grievant did plead guilty." Haber found the guilty plea to be "an admission that [the employee] committed a crime," and that such an admission constituted just cause for the discharge under the terms of the agreement. Haber expressly rejected the Union's argument that because this particular crime was not job-related and did not affect the employee's ability to perform his mail handling job or work with fellow employees, it could not constitute "cause" for discharge under the agreement.

## II

The Union then filed this action in the District Court pursuant to 39 U.S.C. § 1208(b),[2] alleging that the Postal Service's actions had violated the agreement. The Union requested that the court fully enforce arbitrator Seidman's award by ordering that the employee be reinstated at his former job, and vacate arbitrator Haber's decision sustaining the discharge. The District Court held an evidentiary hearing, and issued an opinion and final judgment against the Union on July 29, 1983. The contentions resolved in the District Judge's carefully written opinion can be divided into three categories: enforcement of the Seidman award, arbitrator misconduct, and review of the Haber award.

With regard to the Seidman award in the first arbitration, the District Court first ruled that the Postal Service's return of the employee to a full-pay status constituted compliance with the award. The Court simply noted that the agreement and 39 U.S.C. § 1001(e)(5) state that the Postal

**2.** "Suits for violation of contracts between the Postal Service and a labor organization representing Postal Service employees ... may be brought in any District Court of the United States having jurisdiction of the parties, without respect to the amount in controversy."

Service "shall have the exclusive right [consistent with applicable laws, regulations and the collective bargaining agreement] ... to determine the methods, means, and personnel by which [its] ... operations are to be conducted" (bracketed phrases in original). The Court did not further explain this ruling. The Court also held that Seidman's statement that the Postal Service "shall" personally interview the employee was limited to the facts that were then before Seidman, and that changed circumstances negated any mandatory application of the statement. The Court noted that there is no express requirement in the agreement "specifying the nature or extent of an investigation" to be conducted by the Postal Service prior to a discharge, and ruled that Haber's subsequent arbitration decision that there had been just cause to discharge the employee in this case subsumed and precluded any claim of inadequate investigation.

As for the allegations of arbitrator misconduct in the second arbitration, the District Court noted that there was no verbatim record of the hearing and that the evidence subsequently presented by the parties at the District Court evidentiary hearing was conflicting. The Court then ruled that (1) the proferred testimony of three fellow workers of the discharged employee was "of questionable relevancy and materiality" and would have been "cumulative," and that the arbitrator therefore acted permissibly within his discretion to bar the testimony; (2) the Union's evidence was "not sufficient to establish that time restrictions imposed [on the hearing] by the arbitrator, if any, deprived the Union of a fair hearing"; and (3) because the Union did not state with specificity how the employee's case might have been prejudiced by the arbitrator's alleged dozing, any "momentary 'lapses,' if in fact such lapses occurred," did not deprive the Union of a fair hearing.

Finally, the District Court declined to vacate any part of Haber's decision. The Court ruled that, although Haber had stated that the failure to provide thirty days notice and to interview the employee were serious errors, the clear implication of Haber's decision to uphold the discharge was that Haber did not find these errors to be violations of the terms of the agreement.[3] As for the substance of Haber's decision, the Court ruled that even if Haber had relied on the mistaken belief that the employee had pleaded guilty prior to his discharge, that belief was only one of several factors on which Haber relied and "was not *the* fact underlying the arbitrator's decision" (quoting *Electronics Corp of America v. International Union of Electrical, Radio and Machine Workers, AFL–CIO Local 272*, 492 F.2d 1255, 1257 (1st Cir. 1974)). Therefore the decision was not "so unfounded in reason and fact" as to require reversal (quoting *Brotherhood of Railroad Trainmen v. Central Georgia Railway Co.*, 415 F.2d 403, 415 (5th Cir. 1969), *cert. denied,* 396 U.S. 1008, 90 S.Ct. 564, 24 L.Ed.2d 500 (1970)).

### III

Almost sixty years ago, the federal courts were given the statutory power to enforce, vacate or modify arbitration awards under certain circumstances. Act of Feb. 12, 1925, Pub.L. 68–401, 43 Stat. 883–86, *now codified at* 9 U.S.C. §§ 1–14 (1982). The purpose of this statutory grant was to overrule the common law rule that contracts for arbitration would not be enforced in courts of law or equity, and to reduce delay in litigation concerning arbitration contracts. *See* S.Rep. No. 536, 68th Cong., 1st Sess. 2 (May 14, 1924); 66 Cong.

---

**3.** Concerning notice, the District Court found it "implicit in [Haber's] conclusion with respect to reasonable cause that lesser notice was reasonable and justified under the circumstances" and therefore consistent with Art. XVI, § 4(A) of the agreement, *see supra,* p. 3. As for the lack of a personal interview, the Court stated that "the import of the arbitrator's finding that the employer had reasonable cause is that the events subsequent to [the employee's] suspension vitiated any obligation on the part of the Service to conduct a more extensive investigation and evaluation of the evidence."

Rec. 984 (Dec. 30, 1924) (Remarks of Sen. Walsh).

Section 11 of the statute provides in relevant part that a federal court may modify or correct an arbitration award "[w]here there was ... an evident material mistake in the description of any person, thing, or property referred to in the award" or "[w]here the award is imperfect in matter of form not affecting the merits of the controversy"; in short, the court "may modify and correct the award, so as to effect the intent thereof and promote justice between the parties." 9 U.S.C. § 11. The power to vacate is apparently more limited. The statute provides in pertinent part that an award may be vacated only "[w]here the arbitrators were guilty of misconduct ... in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced"; or "[w]here the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made." 9 U.S.C. §§ 10(c), (d).

■ In the *Steelworkers Trilogy* cases decided in 1960, the Supreme Court clarified the judiciary's role in the specific context of labor arbitration pursuant to collective bargaining agreements. Noting that "arbitration of labor disputes has quite different functions from arbitration under an ordinary commercial agreement," the Court stated that the role played by the judiciary in the context of collectively bargained-for arbitration should be "strictly confined." *Steelworkers v. Warrior & Gulf Co.*, 363 U.S. 574, 578, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960). In *Steelworkers v. Enterprise Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), the Court discussed the role of labor arbitrators and the power of a federal court to review their awards:

> [T]he question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.
>
> .... Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice.... [H]is award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

*Id.*, 363 U.S. at 599, 597, 80 S.Ct. at 1362, 1361; *see also Timken Co. v. Local No. 1123, United Steelworkers of America*, 482 F.2d 1012 (6th Cir.1973). Consequently, an arbitrator's decision is entitled to great deference and generally should be upheld absent irrationality or disregard of plain and unambiguous language in the agreement. *See, e.g., General Telephone Co. of Ohio v. Communications Workers*, 648 F.2d 452, 457 (6th Cir.1981); *Detroit Coil v. International Ass'n of M. & A. Workers*, 594 F.2d 575, 579–81 (6th Cir.), *cert. denied*, 444 U.S. 840, 100 S.Ct. 79, 62 L.Ed.2d 52 (1979). With these broad principles in mind, we turn to the three specific issues before us in this case.

**A. Alleged Arbitrator Misconduct.**

The Union's claims regarding the alleged misconduct may be quickly laid to rest. Because there was no verbatim record of the Haber arbitration hearing, the District Court properly held a thorough evidentiary hearing on the Union's allegations. Union witnesses testified that Haber started the hearing late, ended it early, and dozed off at more than one point while the Union presented its case. Witnesses for the Postal Service testified to the contrary: although the hearing did start 15 to 20 minutes late due to airport traffic, it continued at least 90 minutes longer than the Union witnesses testified, and Haber rescheduled his departing flight to accommodate the long hearing; furthermore, Haber had been alert throughout the hearing. More-

over, Postal Service witnesses testified that the Union's counsel failed to raise any objection concerning alleged dozing or the alleged brevity of the hearing, nor did he request that the hearing be continued. One Union witness conceded that Haber appeared inattentive only "very briefly." The record also indicates that the Union did not point to any specific testimony that Haber failed to consider due to his alleged misconduct. *Cf.* 9 U.S.C. § 10(c) (party seeking vacation of award for misconduct must demonstrate that "rights ... have been prejudiced").

▮ Arbitrators are not bound by formal rules of procedure and evidence, and the standard for judicial review of arbitration procedures is merely whether a party to arbitration has been denied a fundamentally fair hearing. *See Grahams Service, Inc. v. Teamsters Local 975*, 700 F.2d 420, 422 (8th Cir.1982) (citing cases). In this case, the District Judge was entitled to resolve conflicts in the testimony regarding the factual allegations of misconduct. He did not find that any time restrictions were imposed on the hearing or that the arbitrator had dozed off. Moreover, the Court concluded that even if such incidents had occurred, they were minor and insufficient to demonstrate deprivation of a fair hearing. In light of the conflicting testimony and the substantial written briefs submitted to arbitrator Haber by the Union both before and after the hearing, we find no error in the District Court's disposition. *See Oil, Chemical & Atomic Workers v. Ethyl Corp.*, 703 F.2d 933, 935–36 (5th Cir.1983).

▮ Similarly, the District Court was entirely correct that Haber had discretion to prohibit cumulative testimony and that his discretion was not abused in this case. Union witnesses testified in the District Court that the testimony of the proposed witnesses "would [have been] basically similar to what the first witness testified to," and that Haber had barred their testimony because the proffer indicated that the witnesses would testify to the "same thing" as the first witness. Under the usual rules of evidence, federal judges have discretion to bar cumulative evidence after a proffer by counsel. *See* Fed.R.Evid. 103(a)(2), 403; *Hamling v. United States*, 418 U.S. 87, 127, 94 S.Ct. 2887, 2912, 41 L.Ed.2d 590 (1974). This is precisely the procedure followed by Haber in his hearing. Absent any explicit contractual provision to the contrary, an arbitrator's discretion on such matters is certainly no more circumscribed than that of a federal judge. *Cf. Newark Stereotypers Union No. 18 v. Newark Morning Ledger Co.*, 397 F.2d 594, 599 (3rd Cir.) (not "every failure to receive relevant evidence constitutes misconduct which will require ... vacation"), *cert. denied*, 393 U.S. 954, 89 S.Ct. 378, 21 L.Ed.2d 365 (1968).

▮ Further, when interpretation of a term in a collective bargaining agreement such as "just cause" is at issue, as it was in the Haber hearing, an arbitrator's judgment as to whether evidence is or is not relevant to his determination is part of the bargain, and a court's power to disturb such discretionary determinations is quite limited. In his decision, Haber apparently presumed that some of the employee's co-workers would have "no problem" working with the employee even after his conviction, which is the same point that the three proferred witnesses were going to make. This presumed fact, however, did not alter Haber's decision that the conviction could serve as just cause to discharge the employee under the terms of the agreement. Thus neither the relevance of the proferred testimony nor any prejudice from its prohibition is so clear that judicial vacation of the arbitrator's decision is required. Contrary to the Union's suggestion, fundamental fairness does not require that an arbitrator must hear any and all evidence that a party might wish to offer, regardless of its length, repetitiveness or irrelevance. The record simply fails to demonstrate any arbitrary violation of the Union's right to a fair hearing.[4]

4. There was some testimony in the District Court that the Union failed to object to Haber's

## B. Enforcement of the Seidman Award.

We disagree with the Postal Service and the District Court that the Postal Service fully complied with the Seidman award after the first arbitration. Seidman clearly ordered that the employee be returned "to his position in the Columbus Post Office." The Postal Service, however, did not permit the employee to return to the Columbus Post Office or to his mail handler job, but instead merely placed him back on the payroll without any work. There may be merit in the Union's contention that workers find other values in their work besides monetary compensation. More importantly, regardless of whether the employee's administrative leave was a desirable "paid vacation" as the Postal Service maintains, it obviously did not constitute compliance with the unambiguous terms of Seidman's award.

Such noncompliance is not excused by the Postal Service's statutory or bargained-for discretion to determine in the normal course of events how to allocate its personnel. That discretion is clearly and voluntarily modified by the agreement between the Postal Service and the Union to arbitrate their differences and abide by arbitration awards. *See* Agreement, Article III(D) (Postal Service's "exclusive right" to allocate personnel is "subject to the provisions of this Agreement"); 39 U.S.C. § 1001(e)(5) (same). The agreement clearly requires that arbitration awards are "final *and binding." See supra,* p. 837 (emphasis added).

Likewise, once an arbitrator has ordered as part of an unchallenged award that the Postal Service "shall" interview an employee before disciplining him based on criminal charges alone, that obligation is not a discretionary one subject to further interpretive application. It is rather a part of the binding award with regard to that particular employee. The Postal Service's failure to interview the employee prior to discharging him (which discharge was based solely on the criminal charges as stated in the indictment and described by government prosecutors) again constituted noncompliance with an unambiguous component of the arbitrator's award.[5] And just as we must defer to an arbitrator's interpretation and application of a collective bargaining agreement, we must defer to an arbitrator's chosen remedies unless they demonstrate a "clear infidelity" to the agreement itself. *General Telephone Co., supra,* 648 F.2d at 457.

Despite the clear noncompliance with the initial award in this case, however, we agree with the District Court that the employee's subsequent plea of guilty to the criminal charges *now* precludes judicial relief as to that specific employee. As we explain *infra* in part C, arbitrator Haber has clearly interpreted the agreement to mean that a conviction for trafficking in marijuana, by guilty plea or otherwise, constitutes "just cause" for discharge. The Union has cited no reported decision, nor are we aware of any, in which an employee has been ordered reinstated to his job due to procedural violations once an arbitrator

---

alleged dozing because it "didn't feel it was necessary," and that it may have failed to make other objections or made them only in vague, generalized terms. Parties to an arbitration may, of course, be held to have waived their objections if they do not bring certain issues to the attention of the arbitrator while there is still an opportunity to rectify the alleged errors, *Order of Railway Conductors v. Clinchfield Railway Co.,* 407 F.2d 985, 988 (6th Cir.), *cert. denied,* 396 U.S. 841, 90 S.Ct. 104, 24 L.Ed.2d 92 (1969), although we repeat that arbitrations are not always strictly controlled by technical rules applicable to judicial proceedings. In this case the District Court made no factual findings regarding the Postal Service's contention that the

Union failed to object contemporaneously to Haber's alleged misconduct, and we therefore do not reach the issue.

**5.** The Postal Service continues to maintain that, as a factual matter, it did interview the employee prior to sending him the notice of discharge. Arbitrator Haber, however, clearly found to the contrary, and it is the Postal Service that now adamantly defends Haber's alertness and fairness in his hearing. As the District Court properly held, we are not at liberty to disturb this factual finding of the arbitrator absent clear evidence to the contrary.

has found that a discharge is permissible on the merits. The employee has already received all the pay· to which he was entitled under the Seidman award. Thus, beyond scope of our discussion in part C, *infra,* events subsequent to arbitrator Seidman's award have mooted, in effect, any further relief that might otherwise have been available to the employee. The Union has not suggested that any other general relief on behalf of the Union would be appropriate in these circumstances, and at oral argument it expressly limited its request for relief to relief for the individual employee. Because such relief is no longer within our judicial power, ·we affirm the District Court's judgment on this point on grounds of mootness alone.

## C. The Haber Award

The District Court correctly noted that an arbitrator's reliance on a clear mistake of fact must be analyzed differently from an interpretation or application of the terms of a collective bargaining agreement. Although it is sometimes said that arbitration awards cannot be upset "on grounds of erroneous findings of fact," *see, e.g., Amicizia Societa Navegazione v. Chilean Nitrate and Iodine Sales Corp.,* 274 F.2d 805, 808 (2d Cir.), *cert. denied,* 363 U.S. 843, 80 S.Ct. 1612, 4 L.Ed.2d 1727 (1960), the reported cases demonstrate that this aphorism is properly applied to an arbitrator's factual determinations based on disputed or ambiguous evidence (i.e., his *findings*), rather than to clear misstatements of undisputed historical fact. *See, e.g., Wilko v. Swan,* 346 U.S. 427, 435–36, 74 S.Ct. 182, 186–87, 98 L.Ed. 168 (1953) (an arbitrator's "subjective findings on ... purpose and knowledge" cannot be grounds for vacation of an award).

■■■ Thus the First Circuit has ruled that "when *the* 'fact' underlying an arbitrator's decision is concededly a non-fact and where the parties cannot fairly be charged

with the misapprehension, the award cannot stand." *Electronics Corp., supra,* 492 F.2d at 1257. *See also Detroit Coil, supra,* 594 F.2d at 580–81 (vacation appropriate where "the record ... reveals no support whatever for [an arbitrator's] determinations"); *NF & M Corp. v. United Steelworkers of America,* 524 F.2d 756, 760 (3rd Cir.1975) (same). We agree with Judge Coffin's analysis that where the record that was before the arbitrator demonstrates an unambiguous and undisputed mistake of fact *and* the record demonstrates strong reliance on that mistake by the arbitrator in making his award, it can fairly be said that the arbitrator "exceeded [his] powers, or so imperfectly executed them" that vacation may be proper. 9 U.S.C. § 10(d); *see* 492 F.2d at 1257 (arbitrator was in error on an "essential fact"; there was a "gross mistake ... but for which, according to the arbitrator's rationale, a different result would have been reached"). *Compare Industrial Mutual Ass'n v. Amalgamated Workers,* 725 F.2d 406, 411 n. 1 (6th Cir.1984) (even if arbitrator's finding was unsupported by the record, he "did not rely on this finding in rendering his award," and vacation therefore would be improper).

■■■ In this case, it is undisputed that arbitrator Haber was in error regarding the date of the employee's guilty plea. The plea came *after* the discharge, not before, and thus could not possibly have been relied upon by the Postal Service when it undertook to discharge the employee. We also must conclude that Haber's mistake played a central if not essential role in his decision to uphold the discharge as based on "just cause." Haber candidly admitted to entertaining "doubts" about the discharge. But he stated that his doubts were "resolved" by the fact of the employee's plea, which he believed had been entered prior to the discharge. Haber viewed the plea as an "admission" of the criminal charges.[6] It is therefore clear that, if not

---

**6.** The Postal Service may be correct that the "admission" embodied in a guilty plea creates some collateral estoppel effect with regard to the same criminal acts *in a subsequent proceed-* *ing.* This argument, however, completely misses the point of the Union's contention. The issue before arbitrator Haber was whether or not the Postal Service had, *at the time of its*

for his mistaken belief that the plea preceded the discharge, Haber might well have reached a different conclusion regarding whether the Postal Service had just cause to discharge the employee in July 1981, especially in light of Haber's concern about the Postal Service's failure to interview the employee to obtain his side of the story.

In the usual case, the proper course to follow in circumstances such as these would be to vacate the arbitrator's award and remand for a further arbitration decision based on nonerroneous facts. We see no need to issue such an order in this case, however. In his written decision, Haber expressed his firm determination that a plea of guilty to a charge of trafficking in marijuana would constitute just cause for discharge under the terms of the Union's agreement with the Postal Service. Haber did not exceed his powers in reaching that issue, because both the Union and the Postal Service directed their evidence and arguments in part to the question and neither party objected to its consideration at the time. Haber's interpretation and application of the terms of the collective bargaining agreement in the particular factual context placed before him by the parties is exactly the sort of task that an arbitrator properly undertakes. Even if this court might disagree with Haber's interpretation of the agreement as an original matter, we cannot overrule the arbitrator's bargained-for interpretation under the limited grant of power contained in 9 U.S.C. § 10. As the Supreme Court stated in *W.R. Grace & Co. v. Rubber Workers*, 461 U.S. 757, 765, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983), "[r]egardless of what our view might be of the correctness of [the arbitrator's] contractual interpretation, the Company and

the Union bargained for that interpretation. A federal court may not second guess it." *See also Retail Clerks Union v. Murfreesboro Vending Service*, 689 F.2d 623, 626 (6th Cir.1982) (per curiam) ("[I]t is immaterial whether we believe the arbitrator's analysis to be the *best* interpretation of the collective bargaining agreement; it is sufficient that it be a *permissible* interpretation.") Haber's decision is clearly within the permissible range of possible interpretations of the phrase "just cause." Thus, if Haber had been correct about the timing of the employee's plea, there would be absolutely no ground for altering his decision to uphold a subsequent discharge.

The employee did in fact plead guilty to trafficking in marijuana on August 20, 1981, thirty-one days after the effective date of his discharge. Thus the employee himself in effect cured the Postal Service's error: on August 20, 1981, the Postal Service undeniably had just cause to discharge the employee under Haber's interpretation of the agreement. The discharge therefore was improper, if at all, only for the 31-day period between the discharge and entry of the guilty plea. Certainly the Postal Service cannot now be ordered to reinstate an employee convicted of a crime which by binding arbitration has been determined to constitute just cause for discharge. Rather than remand for what would therefore be a meaningless rearbitration,[7] we conclude that under 9 U.S.C. § 11, the intent of arbitrator Haber's award and the interests of justice between the parties will best be promoted by ordering simply that the employee be awarded back pay for the 31-day period between his discharge and the date he pleaded guilty.[8] We remand

---

decision to discharge the employee, "just cause" to discharge him. At that time the Postal Service could not rely on the guilty plea, because the guilty plea did not yet exist. Whether or not a hindsight review of the facts demonstrates that the Postal Service was correct in its evaluation of the facts, the guilty plea can play no role in the evaluation of "just cause" under the terms of the agreement prior to the time the plea was entered.

**7.** The Postal Service has not suggested that we remand for rearbitration should we find against it on this point. A remand for the Union would be fruitless because an arbitrator could find, at best, that the discharge was improper only for the 31 days prior to the guilty plea. The Union has already received an arbitrator's decision that discharge *after* such a plea would be proper in this case, and it has no entitlement to rearbitration of that issue.

**8.** The Union argues that, just as the Postal Ser-

the case to the District Court solely for a determination of the exact amount due and entry of an appropriate judgment. In all other respects the judgment of the District Court is

AFFIRMED.[9]

vice had no "just cause" to discharge the employee when it did, it had no "reasonable cause" to dispense with the 30-day notice period required prior to discharge under the agreement. *See supra*, p. 838. We do not find that the two terms are necessarily identical, and it is reasonable to read Haber's decision, as the District Court did (*see supra*, p. 839 & n. 3), to mean that there was reasonable cause for dispensing with the usual notice, since Haber went on to consider the merits of the just cause issue despite the lack of 30-day notice. At most, Haber's decision was ambiguous on this point, and the District Court properly declined to decide the issue otherwise.

9. The parties shall bear their own costs for this appeal.