UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 02-50749
SUMMARY CALENDAR
_____

PRESTIGE FORD

Plaintiff - Appellant

v.

FORD DEALER COMPUTER SERVICES, INC, formerly known as Dealer Computer Services Inc.

Defendant - Appellee

_____

Appeal from the United States District Court for the
Western District of Texas, Austin Division

_____

March 25, 2003

Before REYNALDO G. GARZA, HIGGINBOTHAM, and BENAVIDES, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

In this appeal we are asked by plaintiff-appellant Prestige Ford ("Prestige" or "Prestige Ford") to review a district court's decision upholding a commercial arbitration award rendered in favor of defendant-appellee Ford Dealer Computer Services ("DCS"). For the following reasons, we affirm the district court's decision.

I. FACTUAL & PROCEDURAL BACKGROUND

Prestige Ford is an automobile dealership located in Garland, Texas. DCS, located in

Houston, Texas, sells computer systems, which are designed to assist Ford dealers in managing their operations. On January 28, 1993, Prestige Ford entered into a written contract with DCS, under which DCS agreed to provide Prestige with hardware, software and maintenance related to one of its computer systems. According to the arbitration panel, the contract's initial five-year term was extended for an additional five years, amounting to a total contract period of ten years, commencing at the installation date.

In September of 1997, Prestige Ford announced its intention to terminate the agreement with DCS. Prestige later alleged that it terminated the agreement because the computer system DCS had provided did not operate correctly and because DCS was unable to perform maintenance for the system in a timely fashion. The contract between the parties contained an arbitration clause, which provided that disputes would be governed by the commercial arbitration rules of the American Arbitration Association.

In July of 1998, DCS filed a claim in arbitration against Prestige Ford, alleging that Prestige had breached the contractual agreement. In response, Prestige Ford filed a series of counterclaims against DCS, including claims of fraud, antitrust violations, and breach of contract.

Prior to the arbitration hearing, Prestige Ford filed five separate motions to compel DCS to produce documents. The three-member arbitration panel heard oral argument on each of the motions to compel, and issued written orders granting or denying each of the various requests.

Arbitration proceedings were held in Austin, Texas, beginning August 6, 2001 and continuing through August 14, 2001. Following the proceedings, the arbitration panel issued its decision. The panel found that Prestige's letter purporting to terminate the agreement with DCS amounted to a breach of contract, and awarded damages in the amount of $101,752.32. The panel

also found that Prestige Ford had not met its burden of proof with regards to any of its counterclaims, and, consequently, rejected each such claim in turn. Finally, citing to the "Default" provision of the agreement between DCS and Prestige, the panel awarded DCS $337,459.76 in costs and attorney fees.

Following the panel's decision, Prestige Ford filed a motion to vacate the arbitration award in the United States District Court for the Western District of Texas. On March 13, 2002, DCS filed both a response to Prestige's motion and its own motion seeking confirmation of the award. In addition, DCS filed a Motion for Protection and to Have Exhibits Kept Under Seal, which the court granted. After reviewing the remaining motions, the district court refused to vacate the arbitration award and granted DCS's motion to confirm the award.

After the district court entered its final judgement in the matter, Prestige Ford moved for rehearing pursuant to FED. R. CIV. P. 59. The district court denied the motion for rehearing and ordered Prestige Ford to pay all costs related to the preparation of DCS's response to the motion. Thereafter, Prestige filed timely notice of this appeal.

## II. STANDARD OF REVIEW

On appeal, Prestige Ford presents a number of arguments related to the arbitration award and the fairness of the proceedings leading up to it. In cases like this, we review the district court's decision using a de novo standard. *Forsythe Int'l, S.A. v. Gibbs Oil Co. of Texas*, 915 F.2d 1017, 1020-21 (5th Cir. 1990). "Usually, however, the district court's review of an arbitration award is extraordinarily narrow." *Gateway Technologies, Inc. v. MCI Telecommunications Corp.*, 64 F.3d 993, 996 (5th Cir. 1995) (internal quotations and citation omitted). "De novo review on the ultimate issue of unfairness enables us to assess whether the

district court accorded sufficient deference in the first instance, an assessment that a more restrictive appellate review would cripple." *Forsythe Int'l, S.A.*, 915 F.2d at 1021.

### III. DISCUSSION

As noted above, Prestige Ford offers a number of arguments related to the fairness of the arbitration proceedings and the arbitration award that resulted therefrom. Ultimately, Prestige seeks vacatur of the award, or, in the alternative, modification of the award. Before addressing Prestige's several arguments, it should be noted that the central tenet of their appeal involves the contention that they should have been provided with the "complete general ledger and other financial documents" they sought to discover from DCS. According to Prestige, these documents were "essential" in order to "develop and prove its case against DCS."

Although DCS urges that this matter is little more than a discovery dispute, Prestige fervently argues that the "thrust of this appeal is far more fundamental." According to Prestige, "the deprivation of complete financial documentation in this case resulted in the wholesale denial of Prestige's ability to defend itself against DCS or prove its counterclaims."

Despite their continued attempts to downplay the discovery-dispute-like nature of their appeal, even Prestige admits that their position centers on the arbitration panel's refusal to compel the discovery of certain evidence. In fact, the district court hit the proverbial nail on the head when it noted that the gravamen of Prestige's case is that the arbitration panel ruled incorrectly on Plaintiff's motions to compel production of certain DCS financial documents. It is in this light that Prestige's appeal must be considered.

A. <u>Prestige's Argument that DCS's Alteration and Withholding of Evidence Resulted in the Denial of a Fair Hearing</u>.

-4-

Prestige argues that DCS's general ledger was produced in altered form and that key sections of the document had been deleted. Prestige also avers that other financial records which were necessary to properly analyze DCS's claims for damages were withheld by DCS. According to Prestige, the arbitration panel's lack of action in response to DCS's alleged misconduct presents a number of grounds for vacatur of the arbitration award.

The arbitration process is a speedy and informal alternative to litigation, and, by its very nature, is intended to resolve disputes without confinement to many of the procedural and evidentiary strictures that protect the integrity of formal trials. *Forsythe Int'l, S.A.*, 915 F.2d at 1022. Parties to voluntary arbitration may not superimpose rigorous procedural limitations on the very process designed to avoid such limitations. *Id*.

Submission of disputes to arbitration always risks an accumulation of procedural and evidentiary shortcuts that would properly frustrate counsel in a formal trial; but because the advantages of arbitration are speed and informality, the arbitrator should be expected to act affirmatively to simplify and expedite the proceedings before him. *Id*. Thus, whatever indignation a reviewing court may experience in examining the record, it must resist the temptation to condemn imperfect proceedings without a sound statutory basis for doing so. *Id*.

The statutory basis for vacatur of an arbitration award is found in 9 U.S.C. § 10(a). According to the statute, the district court has the authority to vacate an arbitration award if: (1) the award was procured by corruption, fraud, or undue means; (2) there is evidence of partiality or corruption among the arbitrators; (3) the arbitrators were guilty of misconduct which prejudiced the rights of one of the parties; or (4) the arbitrators exceeded their powers. *Id*. (citing 9 U.S.C. § 10).

We agree with the district court's conclusion that Prestige does not meet any of the §10(a) requirements. What Prestige does not emphasize when presenting its arguments to this Court is that the reason documents were "withheld" by DCS is that the arbitration panel, after holding hearings on motions to compel the very evidence at issue, explicitly decided against ordering DCS to produce such documents. Furthermore, even if a fraud of some sort did occur relating to the form in which DCS presented portions of its general ledger, the requisite nexus between the fraud and the basis for the panel's award does not exist. In this case, the record indicates that the panel heard arguments regarding the allegations that the general ledger had been altered and reached its decision on grounds independent of the alleged fraud. *See id.* at 1022-23 (where the panel hears the allegation of fraud and then rests its decision on grounds clearly independent of the issues connected to the alleged fraud, the statutory basis for vacatur is absent; the panel effectively ruled that the asserted fraud issue was immaterial).

As noted, we find no particular statutory basis for attacking the propriety of the panel's action in deeming specific portions of DCS's general ledger –and other documents– irrelevant. Arbitrators are not bound to hear all of the evidence tendered by the parties; however, they must give each of the parties to the dispute an adequate opportunity to present its evidence and arguments. *Id.* at 1023 (citing *Hoteles Condado Beach v. Union de Tronquistas Local 901*, 763 F.2d 34, 39 (1st Cir. 1985). In the case at hand, hearings were held and each disputed item was given consideration by the panel; thus, more than adequate opportunity was afforded to the parties and the minimum standards of fundamental fairness were met. *See id.*; *Teamsters, Local Union 657 v. Stanley Structures, Inc.*, 735 F.2d 903, 906 (5th Cir. 1984); *Bowles Financial Group, Inc. v. Steel, Nicolaus & Co.*, 22 F.3d 1010, 1013 (10th Cir. 1994); *see also International*

*Union UAW v. Kraft Foods, Div. Of Kraftco, Inc.*, 409 F.Supp. 559, 562 (E.D.Pa. 1976) (decisions as to relevance and admissibility of evidence belong to arbitrators alone).

      B. <u>Prestige's Argument that the Award Should be Vacated on Non-Statutory Grounds</u>.

Prestige also urges that vacatur is justified based on the panel's manifest disregard of the law and on public policy grounds. This Court has adopted the "manifest disregard of the law" standard as a non-statutory ground for vacating an arbitration award. *See, e.g., Williams v. Cigna Financial Advisors, Inc.*, 197 F.3d 752, 759 (5th Cir. 1999). Though it was handed down prior to this Circuit's adoption of the "manifest disregard of the law" standard, our decision in *R.M. Perez & Associates, Inc. v. Welch*, 960 F.2d 534, 539 n.1 (5th Cir. 1992), contains a brief description of its nature. In addition, *Welch* cites the Second Circuit's decision in *Bobker*, which offers the following insight:

"Manifest disregard of the law" by arbitrators is a judicially-created ground for vacating their arbitration award, which was introduced by the Supreme Court in *Wilko v. Swan*, 346 U.S. 427, 436-37, 74 S.Ct. 182, 187-88, 98 L.Ed. 168 (1953). It is not to be found in the federal arbitration law. 9 U.S.C. § 10. Although the bounds of this ground have never been defined, it clearly means more than error or misunderstanding with respect to the law. The error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. Moreover, the term "disregard" implies that the arbitrator appreciates the existence of a clearly governing principle but decides to ignore or pay no attention to it. To adopt a less strict standard of judicial review would be to undermine our well established deference to arbitration as a favored method of settling disputes when agreed to by the parties. Judicial inquiry under

the "manifest disregard" standard is therefore extremely limited. The governing law alleged to have been ignored by the arbitrators must be well defined, explicit, and clearly applicable.

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930, 933-34 (2nd Cir. 1986) (internal citations omitted).

If it is not clear from the above paragraph, the "manifest disregard" standard is an extremely narrow, judicially-created rule with limited applicability. In the case at hand, the record does not indicate that the arbitrators ignored the existence of any clearly governing principle in reaching its award. *See id.* Furthermore, given the limited record available to this Court, absent further documentation in the record suggesting a willful inattentiveness to the governing law, it would be difficult to find that the arbitration panel acted with manifest disregard for an applicable legal principle without undermining our stated deference to the arbitration process. *See id.*; *see also ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1463 (10th Cir. 1995). Thus Prestige's arguments related to the arbitrators' "manifest disregard of the law" ultimately prove unpersuasive.

Prestige also argues that public policy supports vacatur. According to Prestige, "vacatur of this award would reinforce the integrity of arbitration and encourage the long-held public policy of encouraging arbitration." The Fifth Circuit, following the Supreme Court's lead, does recognize some circumstances in which a court may refuse to enforce an arbitration award that is contrary to public policy. *See Gulf Coast Industrial Workers Union v. Exxon Co., U.S.A.*, 991 F.2d 244, 248-49 (5th Cir. 1993). This Court –citing one of the leading Supreme Court cases on the issue, *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 108 S.Ct. 364, 98

L.Ed.2d 286 (1987)– has noted that:

> [W]hen applying the narrow public policy exception, courts are forbidden to use imprecise notions of public policy which would allow ill-defined considerations to negate the rule favoring judicial deference. At the very least . . . an alleged public policy must be properly framed under the approach set out in *W.R. Grace*, and the violation of such a policy must be clearly shown if an award is not to be enforced.

*Gulf Coast Industrial Workers Union*, 991 F.2d at 249 (internal quotations omitted).

The Supreme Court has made clear that any public policy used to vacate an arbitration award must be "explicit," "well defined," and "dominant." *W.R. Grace & Co. v. Rubber Workers*, 461 U.S. 757, 766, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983). In addition, the public policy must be ascertained by reference to laws and legal precedents, and not from general considerations of proposed public interests. *Id.*

The arguments Prestige offers –and in particular, the evidence in support of those arguments– fall well short of establishing an explicit, well-defined and dominant public policy. *See id.* Therefore the arguments related to vacatur based on public policy are unavailing.

C. Prestige's Argument that the Arbitration Award Should be Modified.

Prestige also submits that this Court should modify the arbitration award pursuant to 9 U.S.C. § 11(a). According to Prestige, the award should be modified so that DCS would receive a total of zero dollars.

Under the Federal Arbitration Act, awards may be modified, but only in the event of "an evident material miscalculation of figures." 9 U.S.C. § 11(a). This Court has previously noted that an "evident material calculation" occurs "where the record that was before the arbitrator

demonstrates an unambiguous and undisputed mistake of fact and the record demonstrates strong reliance on that mistake by the arbitrator in making his award." *Valentine Sugars, Inc. v. Donau Corp.*, 981 F.2d 210, 214 (5th Cir. 1993) (citing *National Post Office v. United States Postal Service*, 751 F.2d 834, 843 (6th Cir. 1985)). In the case at hand, there was no "evident material miscalculation." *See id.*; *see also Apex Plumbing Supply, Inc. v. U.S. Supply Co., Inc.*, 142 F.3d 188, 194 (4th Cir. 1998).

## IV. CONCLUSION

As the district court noted in its opinion, when parties agree to arbitration, they agree to accept whatever reasonable uncertainties might arise from the process. Undoubtedly, one party will emerge from an arbitration feeling that they were in some way shortchanged. That, however, does not alter or affect the limited role of the courts in reviewing arbitration awards. For the aforementioned reasons, the judgement of the district court is AFFIRMED.