# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 28, 2008

Charles R. Fulbruge III
Clerk

No. 07-20624
Summary Calendar

RICHARD ALLEN MOORE

Plaintiff-Appellant

v.

JOHN E POTTER, Postmaster General, United States Postal Service;
NATIONAL ASSOCIATION OF LETTER CARRIERS AFL-CIO; NATIONAL
ASSOCIATION OF LETTER CARRIERS BRANCH 283

Defendants-Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:06-CV-1611

Before KING, DAVIS and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Richard Allen Moore appeals the district court's dismissal of his claims against the defendants. We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. FACTS AND PROCEEDINGS

Moore had been employed by the U.S. Postal Service ("the Service") since 1983 without any disciplinary problems.[1] However, in mid-October 2005, he was approached on a few occasions by a supervisor, Sandra McIntosh, regarding medication Moore was taking. McIntosh was concerned about Moore operating a vehicle while taking this medication. On October 20, 2005, after receiving medical documentation from Moore which McIntosh had requested, McIntosh told him that he was required to complete another form. Moore became agitated and a union steward, Joseph Garcia, took him to the back loading dock of the post office to get fresh air and calm down. McIntosh went to find Moore who stood up, kicked a chair back, cursed her, and raised his hand to strike her. McIntosh claimed she raised her hand to defend herself, Moore hit her forearm and then pushed her. Thereafter, McIntosh left the dock, and Moore was escorted to his car. The next day, Moore provided a typed statement to postal officials. The postmaster also met with Moore, but he walked out of the meeting and did not return.

Moore was placed on a non-duty, non-pay status pursuant to the Service's collective bargaining agreement ("CBA") with the National Association of Letter Carriers ("the Union"). The Union filed a grievance on November 2, 2005, protesting Moore's suspension. Moore then received a notice of proposed removal, and the Union filed a grievance regarding that notice. Neither grievance was resolved and the Union appealed both matters to arbitration, which took place on March 2, 2006. The arbitration focused on whether the Service had just cause for the suspension and the notice of proposed removal.

At the arbitration, Moore was assisted by a Union representative. All of the individuals present on the dock at the time of the incident testified. Garcia

---

[1] Unless stated otherwise, the facts set forth herein are taken from the April 10, 2006, arbitration order attached to, and incorporated in, Moore's complaint.

corroborated McIntosh's account, but a letter carrier testified that Moore did not touch McIntosh, although he admitted that he had turned his back and did not witness the incident. Another union steward, although not an eyewitness, offered testimony that seemed to corroborate that McIntosh had been hit. The Union presented several witnesses who essentially offered character evidence that Moore would not have assaulted McIntosh.

The arbitrator determined that the Service had just cause for the suspension and the notice of proposed removal. The arbitrator cited testimony corroborating McIntosh's position and found that the witness letter carrier was not credible. The Union's CBA with the Service contained a finality provision regarding arbitration decisions.

On May 10, 2006, Moore filed his original complaint against the Service and the Union. On May 10, 2007, finding that Moore's allegations were vague and conclusory, the district court granted the defendants' motion to dismiss without prejudice for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Moore filed his first amended complaint on May 25, 2007. He claimed that the arbitration decision regarding his termination should be vacated. He also made a wrongful termination claim against the Service, a breach of contract claim against the Service and the Union, and a breach of the duty of fair representation claim against the Union. The district court found that the first amended complaint was identical to the original, except that it added the breach of the duty of fair representation claim. On July 30, 2007, the district court granted the defendants' motion to dismiss the first amended complaint with prejudice for failure to state a claim. Moore timely appeals the dismissal of his complaint and separately alleges that his due process rights were violated during his termination process.

## II. STANDARD OF REVIEW

"This Court reviews de novo the district court's order on a Rule 12(b)(6) motion to dismiss. [We] accept[] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." Sonnier v. State Farm Mut. Auto. Ins. Co., 509 F.3d 673, 675 (5th Cir. 2007) (internal citation and quotations omitted). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965 (internal citation and footnote omitted). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Fernandez-Montes v. Allied Pilots Ass'n, 987 F.2d 278, 284 (5th Cir. 1993).

## III. DISCUSSION

A.    Dismissal

1.    Duty of Fair Representation

"A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." Vaca v. Sipes, 386 U.S. 171, 190 (1967).

> A union does not breach [this] duty . . . through simple negligence or a mistake in judgment. We have upheld a determination that a union did not breach its duty when its conduct in processing an employee's grievance was less than enthusiastic and not perfect. The critical question is whether a union's conduct was arbitrary, discriminatory, or in bad faith, so that it undermined the fairness or integrity of the grievance process.

Landry v. The Cooper/T. Smith Stevedoring Co., 880 F.2d 846, 852 (5th Cir. 1989) (internal citations and quotations omitted).

In his complaint, Moore makes several factual allegations to support his claim that the Union failed to fairly represent him. He alleges that the Union

did the following: (1) it assigned a representative that was not experienced to defend him; (2) the president of the Union promised to testify on his behalf but did not; (3) it did not object when the arbitrator asked how long it would take him to get to the airport, resulting in the arbitrator's failure to consider Moore's witnesses; (4) it did not object to a change of the hearing location which made it "impossible for certain . . . key witnesses to testify;" (5) it allowed his rights to be violated during the investigation in violation of Supreme Court precedent; (6) it allowed the Service to violate his rights under the Civil Service Reform Act; (7) it did not protect his Fifth Amendment rights; (8) it allowed Moore to be suspended; (9) it did not require the Service to follow procedures in 5 U.S.C. § 7513(b); (10) it did not "force the [Service] to go by the Douglas Factors;" (11) it did not "require that the 'Emergency suspension' or the 'termination for conduct' be done by the Agency head, which is a requirement;" (12) it ignored that the Service's Zero Tolerance Policy regarding violence in the workplace was violated and ignored that the Service's investigation was "improper;" (13) it did not receive a copy of the Service's investigative memoranda from postal inspectors; and (14) it did not argue the five-part Metz test.

We agree with the district court that Moore's allegations are insufficient to state a claim of breach of the duty of fair representation. With regard to allegation (1)—Moore's claim about his representative's experience level—his allegation is conclusory, and he provides no factual allegations to support that conclusion. Furthermore, even if proven, his claim is one of simple negligence which does not rise to the level needed to support a claim of breach of duty of fair representation. Allegation (2)—his claim that the Union's president promised but failed to testify—does not rise to the level of arbitrary, discriminatory, or bad faith representation. Allegations (3) and (4), regarding the arbitration procedures, fail to indicate which "key witnesses" would have testified or needed to be considered. Furthermore, based upon the arbitration award, which Moore

attached to, and incorporated in, his amended complaint, the witnesses whose testimony was material to the proceeding, as well as character witnesses for Moore, actually testified at arbitration.[2]

Allegations (5) through (11) all complain that the Union failed to force the Service to comply with a variety of requirements. These allegations, however, are conclusory. Furthermore, in these allegations, Moore argues that the Union did not prevent the Service from taking actions against him or force the Service to act in a certain manner towards him. Nonetheless, Moore's complaint and the arbitration award show that the Union represented Moore in grievance and arbitration proceedings to challenge the Service's suspension and proposed removal. None of these allegations indicate that the Union's representation of Moore in proceedings to protect his rights breached its duty of fair representation.

Allegation (12)—the Union's "ignor[ance]" of violations of the Service's Zero Tolerance Policy or "improper" investigation—is conclusory and only accuses the Union of negligence, not that its representation was arbitrary, discriminatory, or in bad faith. Allegation (13)—the Union did not obtain U.S. Postal Inspection Service memoranda—does not indicate that the Union breached its duty of fair representation because several witnesses testified about the October 20, 2005 incident in arbitration proceedings. Although the memoranda may have been helpful in preparing a defense, the failure to receive them would be, at most, negligent.

Allegation (14)—the Union did not argue that the arbitrator should consider the five-part test in Metz v. Dep't of Treasury, 780 F.2d 1001, 1002 (Fed.

---

[2] "[T]he court may review the documents attached to the motion to dismiss . . . where the complaint refers to the documents and they are central to the claim." Kane Enters. v. MacGregor (USA) Inc., 322 F.3d 371, 374 (5th Cir. 2003).

Cir. 1986)—is inapplicable to this case. Moore was accused of actually hitting and shoving McIntosh, not communicating a threat, as in Metz.

Based upon our review of Moore's claims in his first amended complaint we agree with the district court's decision that even if Moore's allegations are accepted as true, Moore did not plead sufficient facts to establish that the Union's representation was arbitrary, discriminatory, or in bad faith. As such, Moore failed to state a claim upon which relief could be granted.

2.     Wrongful Termination and Breach of Contract Claims

An "employee is bound by the results of the grievance proceedings, according to the finality provisions of the typical collective bargaining contract, unless the union has breached its statutory duty of fair representation in processing the grievance." Sturgeon v. Airborne Freight Corp., 778 F.2d 1154, 1158 (5th Cir. 1985) (footnote omitted). If an employee proves the Union breached its duty of fair representation, he is "entitled to an appropriate remedy against the employer as well as the Union." Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 572 (1976).

Moore has failed to state a claim against the Union for a breach of its duty of fair representation, and, thus he cannot overcome the finality provisions of the Union's CBA with the Service. Accordingly, his wrongful termination and breach of contract claims were properly dismissed by the district court.

3.     Vacatur of the Arbitration Award

In his first amended complaint, Moore did not indicate the legal basis under which he sought to vacate the arbitration award. The district court dismissed Moore's claim to vacate the arbitration award on the basis that it arose from the CBA, citing Landry, 880 F.2d at 850. "[W]hen reviewing a case involving a CBA and arising under Section 301 [of the Labor Management Relations Act, 29 U.S.C. § 185], courts are not obligated to rely on the [Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 et seq.] but may rely on it for guidance in

reviewing an arbitration award." Int'l Chem. Workers Union v. Columbian Chems. Co., 331 F.3d 491, 494 (5th Cir. 2003). However, this Court has indicated that it is now plausible that CBAs are subject to the FAA. See Int'l Ass'n of Machinists & Aerospace Workers Local Lodge 2121 AFL-CIO v. Goodrich Corp., 410 F.3d 204, 207 n.2 (5th Cir. 2005) (citing Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 109 (2001)). Nonetheless, there is no need to decide whether the FAA applies to the CBA here, because, even if the FAA were applicable, the district court was correct in dismissing Moore's claim.

Under the FAA, a district court may vacate an arbitration award:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). This Court also recognizes that an arbitration award may be vacated when an arbitrator manifestly disregards the law, which "is an extremely narrow, judicially-created rule with limited applicability." Prestige Ford v. Ford Dealer Computer Servs., Inc., 324 F.3d 391, 395–96 (5th Cir. 2003). Finally, an arbitration award may be vacated if it is "contrary to public policy." Id. at 396.

In his complaint, Moore made the following allegations: (1) the arbitrator did not render an impartial and fair decision; (2) the arbitrator "already had his mind made up as to the outcome of the case;" (3) the arbitrator was incompetent

and biased; (4) the Service did not meet its burden; (5) the arbitrator did not allow some of Moore's "key witnesses" to testify; (6) the hearing was moved, making it impossible for certain "key witnesses" of Moore's to testify; (7) the arbitrator "discussed other people's cases;" (8) the arbitrator "continually asked how long it would take him to get back to the airport, so that he would not miss his 7:00 p.m. flight;" (9) the Service's proposed letter of removal "was unwarranted, without merit and was issued without just cause;" and (10) the Service did not prove its charges for various reasons.

Allegations (1) through (4) are conclusory, and Moore provides no specific facts to support them. Regarding allegations (5) and (6), Moore does not indicate which witnesses, who were material to the outcome of the case, were unable to testify. Also, as discussed above, the arbitration award reflects that all of the witnesses to the alleged incident, as well as character witnesses for Moore, testified. On its face, allegation (7) does not support a claim because an arbitrator would be expected to rely on precedent in making a decision. Allegation (8), regarding the arbitrator's concern that he might miss his flight, does not rise to the level necessary for a court to vacate an arbitration award. Finally, allegations (9) and (10) attack the Service's actions and case at arbitration. They are unrelated to the arbitrator's actions and do not indicate that the award was contrary to public policy.

Based upon our review of Moore's claims in his first amended complaint, we agree with the district court that Moore failed to state a claim to vacate the arbitration award.

B.    Due Process

On appeal, Moore claims that his due process rights were violated in the method by which he was terminated. Moore, however, asserted no due process claim in the district court. "Failure to raise a due process objection before a

district court waives that objection on appeal." Newby v. Enron Corp., 394 F.3d 296, 309 (5th Cir. 2004).  Therefore, his due process claim is waived.

## IV. CONCLUSION

The order of the district court granting the defendants' motion to dismiss is AFFIRMED.