REVISED MARCH 18, 2009
IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 5, 2009

Charles R. Fulbruge III
Clerk

No. 07-20670

CITIGROUP GLOBAL MARKETS INC, formerly known as Salomon Smith Barney Inc

Movant - Appellee

v.

DEBRA M BACON

Respondent - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before JOLLY, BARKSDALE, and HAYNES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

An arbitration panel ordered Citigroup Global Markets to pay Debra Bacon $256,000. Citigroup moved the district court to vacate the award, and the district court obliged on the basis that the arbitrators had manifestly disregarded the law. On appeal, we consider whether manifest disregard of the law remains a valid ground for vacatur of an arbitration award in the light of the Supreme Court's recent decision in Hall Street Associates, L.L.C. v. Mattel, Inc., 128 S.Ct. 1396, 1403 (2008).[1] We conclude that Hall Street restricts the grounds

---

[1] The Supreme Court decided Hall Street after the district court issued its opinion in this case.

for vacatur to those set forth in § 10 of the Federal Arbitration Act (FAA or Act), 9 U.S.C. § 1 et seq., and consequently, manifest disregard of the law is no longer an independent ground for vacating arbitration awards under the FAA. Hall Street effectively overrules our previous authority to the contrary, so we must VACATE the district court's judgment and REMAND for reconsideration in accord with the exclusivity of the statutory grounds.

I.

Debra Bacon's quarrel with Citigroup began in 2002 when she discovered that her husband had withdrawn funds from her Citigroup Individual Retirement Accounts without her permission. By forging her signature, he made five withdrawals totaling $238,000. As soon as Bacon discovered the unauthorized withdrawals, she notified Citigroup.

In 2004, Bacon submitted a claim in arbitration against Citigroup seeking reimbursement for the unauthorized withdrawals. The arbitration panel granted Bacon $218,000 in damages and $38,000 in attorneys' fees. Citing § 10 of the FAA, Citigroup made an application to the district court requesting vacatur of the award.

The district granted the motion to vacate, holding that the award was made in manifest disregard of the law. The court based its holding on three grounds: 1) Bacon was not harmed by the withdrawals because her husband used the money for her benefit and subsequently promised to pay her back; 2) Bacon's claims were barred by Texas law, which permits such claims only if the customer reports the unauthorized transaction within thirty days of the withdrawal; and 3) Texas law requires apportionment among the liable parties, which, in this case, includes Bacon's husband.

Bacon appeals. We review de novo the vacatur of an arbitration award. Kergosien v. Ocean Energy, Inc., 390 F.3d 346, 352 (5th Cir. 2004).

II.

A.

Although Hall Street clearly has the effect of further restricting the role of federal courts in the arbitration process, there is nothing revolutionary about its holding.

Even before the enactment of the United States Arbitration Act in 1925,[2] courts of equity would set aside an arbitration award only in narrowly defined circumstances. Burchell v. Marsh, 58 U.S. 344, 349-50 (1854); Karthaus v. Ferrer, 26 U.S. 222, 228 (1828). If the arbitration award was "within the submission, and contain[ed] the honest decision of the arbitrators, after a full and fair hearing of the parties, a court of equity [would] not set it aside for error, either in law or fact." Burchell, 58 U.S. at 349. This deference was appropriate because a submission agreement–a document executed by both parties and presented to the arbitrators in order to outline the dispute and the desired arbitration procedures–was a valid and enforceable contract. District of Columbia v. Bailey, 171 U.S. 161, 171 (1898). Thus, a provision in the submission agreement requiring the parties to abide by the arbitrator's decision made the arbitration award binding. Even when a submission agreement did not contain an express agreement to adhere to the decision of the arbitrators, courts implied such an agreement and enforced the awards as binding. See Smith v. Morse, 76 U.S. 76, 82 (1869) ("The law implies an agreement to abide the result of an arbitration from the fact of submission."). Although arbitration was binding and final, awards could be set aside in the following circumstances: (1) where the arbitrators engaged in fraud, corruption, or improper conduct; (2) where the arbitrators failed to decide all of the issues submitted; (3) where the arbitrators exceeded their powers by deciding issues not submitted; and

---

[2] United States Arbitration Act, 43 Stat. 883 (1925). The FAA, enacted in 1945, was based upon the United States Arbitration Act.

(4) where the award was not certain, final, and mutual. See Burchell, 58 U.S. at 351 ((1) and (3)); Carnochan v. Christie, 24 U.S. 446, 460–67 (1826) ((2), (3), and (4)). These limited grounds are akin to the provisions of § 10 of the FAA.

Importantly, awards were affirmed even if based upon error in law or fact. Burchell, 58 U.S. at 349. "A contrary course would be a substitution of the judgment of the chancellor in place of the judges chosen by the parties, and would make an award the commencement, not the end, of litigation." Id. Burchell also cautioned against assuming improper conduct from mere error: "We are all too prone, perhaps, to impute either weakness of intellect or corrupt motives to those who differ with us in opinion." Id. at 350. The Supreme Court has continued to emphasize the importance of respecting the arbitration process. In Hall Street, the Court explained: permitting vacatur and modification of arbitration awards on more expansive grounds "opens the door to the full-bore legal and evidentiary appeals that can rende[r] informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process, and bring arbitration theory to grief in post-arbitration process." 128 S.Ct. at 1405 (citations and internal quotation marks omitted) (alteration in Hall Street).

In short, strictly confining the perimeter of federal court review of arbitration awards is a widely accepted practice that runs throughout arbitration jurisprudence–from its early common law and equity days to the present.

## B.

### 1.

Congress embraced this notion that arbitration awards should generally be upheld barring some sort of procedural injustice, and §§ 10 and 11 of the FAA enumerate the circumstances under which an award may be vacated, modified, or corrected when the action is one brought under the Act. Under § 10, courts are permitted to vacate an arbitration award

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

As we have earlier noted, the Supreme Court in Hall Street has recently addressed the extent to which courts may vacate or modify the work of arbitrators on grounds beyond those found in §§ 10 and 11. In their agreement to arbitrate, the Hall Street parties agreed contractually to give the district court the authority to vacate or modify the award on grounds that were not provided in §§ 10 and 11. The agreement was negotiated during the litigation of the case and was entered as an order by the district court. It required the district court to "vacate, modify or correct any award: (i) where the arbitrator's findings of facts are not supported by substantial evidence, or (ii) where the arbitrator's conclusions of law are erroneous." Hall Street, 128 S.Ct. at 1400-01. After arbitration, the district court vacated the award for legal error. Ultimately, the Ninth Circuit held that the terms controlling judicial review were unenforceable and ordered the arbitration award reinstated. The Supreme Court then "granted certiorari to decide whether the grounds for vacatur and modification provided by §§ 10 and 11 of the FAA are exclusive." Id. at 1401. The petitioner

argued that the agreement to expand the court's review beyond the specific provisions of the statute should be respected because "arbitration is a creature of contract, and the FAA is motivated, first and foremost, by a congressional desire to enforce agreements into which parties ha[ve] entered." Id. at 1404 (citations and internal quotation marks omitted) (alterations in Hall Street). The Court rejected this argument.

The Supreme Court observed that § 9 of the FAA, which states that upon the application for an order confirming an arbitration award the court "must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 . . .," suggests that judicial review is constrained by the statute. There "is nothing malleable about 'must grant,' which unequivocally tells courts to grant confirmation in all cases, except when one of the 'prescribed' exceptions applies." Id. at 1405.

Hall Street also found that the Act's legislative history indicated that Congress intended the statutory grounds for vacatur and modification to be the exclusive means for setting aside or changing an arbitration award challenged under the FAA. In a brief submitted to the House and Senate Subcommittees of the Committees on the Judiciary, one of the primary drafters of the Act said, "The grounds for vacating, modifying, or correcting an award are limited. If the award [meets a condition of § 10], then and then only the award may be vacated. . . . If there was [an error under § 11], then and then only it may be modified or corrected . . . ." Id. at 1406 n. 7 (citing Arbitration of Interstate Commercial Disputes, Joint Hearings before the Subcommittees of the Committees on the Judiciary on S. 1005 and H. R. 646, 68th Cong., 1st Sess., 34 (1924)) (additions and omissions in Hall Street).

Based both on the text and on the legislative history, Hall Street concluded that §§ 10 and 11 provide the exclusive regimes for review under the FAA. The Court reiterated this holding several times: "We hold that the statutory grounds

are exclusive"; "We agree with the Ninth Circuit that they are [exclusive] . . ."; "We now hold that §§ 10 and 11 respectively provide the FAA's exclusive grounds for expedited vacatur and modification"; "In holding that §§ 10 and 11 provide exclusive regimes for the review provided by the statute . . . ."  Hall Street, 128 S.Ct. at 1400, 1401, 1403, 1406.  This rule, Hall Street determined, is consistent with the "national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway." Id. at 1405.

2.

Before we leave Hall Street, we must point out that the petitioner, citing Wilko v. Swan, 346 U.S. 427, 436-37 (1953), argued that the widespread judicial recognition of manifest disregard of the law as a nonstatutory ground for vacatur suggests that §§ 10 and 11 are not exclusive.  Hall Street, 128 S.Ct. at 1403.  They argued that if this judicial expansion is permissible, then the instant contractual expansion similarly should be accepted.  The Supreme Court, however, questioned whether Wilko should even be read as creating an independent ground for vacatur.  Id. at 1404.  That issue, Hall Street observed, was not before the Court in Wilko, and Wilko's language, upon which the circuit courts have based the standard, is vague.  The Hall Street Court speculated and concluded:

> Maybe the term "manifest disregard" was meant to name a new ground for review, but maybe it merely referred to the § 10 grounds collectively, rather than adding to them.  Or, as some courts have thought, "manifest disregard" may have been shorthand for § 10(a)(3) or § 10(a)(4), the subsections authorizing vacatur when the arbitrators were "guilty of misconduct" or "exceeded their powers."  We, when speaking as a Court, have merely taken the Wilko language as we found it, without embellishment, and

> now that its meaning is implicated, we see no reason to accord it the significance that [the petitioner] urges.

Id. (citations omitted) (emphasis added). In short, Hall Street rejected manifest disregard as an independent ground for vacatur, and stood by its clearly and repeatedly stated holding, as noted in the earlier paragraph, that §§ 10 and 11 provide the exclusive bases for vacatur and modification of an arbitration award under the FAA.

## C.

It is certainly true that over the years this circuit, like most other circuits,[3] ultimately came to recognize manifest disregard of the law as a nonstatutory basis for vacatur. See, e.g., Kergosien, 390 F.3d at 353; Prestige Ford v. Ford Dealer Computer Servs., Inc, 324 F.3d 391, 395-96 (5th Cir. 2003). Even so, manifest disregard of the law was defined as a standard difficult to satisfy. Manifest disregard of the law

> means more than error or misunderstanding with respect to the law. The error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. Moreover the term "disregard" implies that the arbitrator appreciates the existence of a clearly governing principle but decides to ignore or pay no attention to it.

---

[3] See Comedy Club, Inc. v. Improv West Assocs., 514 F.3d 833, 846 (9th Cir. 2008), vacated, 129 S.Ct. 45; McCarthy v. Citigroup Global Markets, Inc., 463 F.3d 87, 91, 92 n.6 (1st Cir. 2006) (explaining that "manifest disregard" is extrastatutory); Kurke v. Oscar Gruss and Son, Inc., 454 F.3d 350, 354 (D.C. Cir. 2006); Stark v. Sandberg, Phoenix & von Gontard, P.C., 381 F.3d 793, 799 (8th Cir. 2004); Hoeft v. MVL Group, Inc., 343 F.3d 57, 64 (2d Cir. 2003); Dluhos v. Strasberg, 321 F.3d 365, 370 (3d Cir. 2003); Bowen v. Amoco Pipeline Co., 254 F.3d 925, 932 (10th Cir. 2001); Flex-Foot, Inc. v. CRP, Inc., 238 F.3d 1362, 1365 (Fed. Cir. 2001); Dawahare v. Spencer, 210 F.3d 666, 669 (6th Cir. 2000); Apex Plumbing Supply, Inc. v. Supply Co., Inc., 142 F.3d 188, 193 (4th Cir. 1998); Montes v. Shearson Lehman Bros., Inc., 128 F.3d 1456, 1461-62 (11th Cir. 1997). But see Wise v. Wachovia Sec., LLC, 450 F.3d 265, 268-69 (7th Cir. 2006) (noting that in the Seventh Circuit manifest disregard of the law fits within § 10(a)(4)).

Prestige Ford, 324 F.3d at 395 (citing Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker, 808 F.2d 930, 933-34 (2d Cir. 1986)). In addition, we have stated that an award may be vacated for manifest disregard of the law only when "the award resulted in a 'significant injustice.'" Kergosien, 390 F.3d at 355 (citing Williams v. CIGNA Fin. Advisors, Inc., 197 F.3d 752, 762 (5th Cir. 1999)).

Our circuit did not accept manifest disregard of the law as a nonstatutory ground for vacatur with immediate confidence and certainty. Compare McIlroy v. PaineWebber, Inc., 989 F.2d 817, 820 n.2 (5th Cir. 1993) (declining "to adopt 'manifest disregard', or any other standard, as an addendum to section 10"), with Williams, 197 F.3d at 759. Indeed, manifest disregard of the law does not have a compelling origin as a ground for vacatur. Its modest debut occurs in a vague phrase found in Wilko v. Swan: "the interpretations of law by the arbitrators in contrast to manifest disregard are not subject, in the federal courts, to judicial review for error in interpretation." 346 U.S. at 436-37. That is all Wilko said about it.

Thus, it is not surprising that the lower courts initially grappled with the uncertain implications of this clause. See, e.g., O.R. Sec., Inc. v. Prof'l Planning Assocs., 857 F.2d 742, 746-47 (11th Cir. 1988); Nat'l R.R. Passenger Corp. v. Chesapeake and Ohio Ry. Co., 551 F.2d 136, 143 n.9 (7th Cir. 1977) ("We share the reservations recently expressed by the Second Circuit as to whether the Wilko dictum was actually intended to add 'manifest disregard' of the law to the statutory grounds for vacating an award in 9 U.S.C. § 10."); I/S Stavborg v. Nat'l Metal Converters, Inc., 500 F.2d 424, 431 & n.13 (2d Cir. 1974); San Martine Compania de Navegacion, S.A. v. Saguenay Terminals Ltd., 293 F.2d 796, 802 n.4 (9th Cir. 1961) ("Frankly, the Supreme Court's use of the words 'manifest disregard', has caused us trouble here."). Uncertain about the propriety of vacating an award for manifest disregard of the law, some courts avoided the

issue by assuming, without deciding, that it was a valid ground for vacatur, but declining to vacate the award nonetheless. See O.R. Sec., 857 F.2d at 747 ("we need not decide that issue today because even if we were to accept such a ground, O.R. has failed to make any showing that the arbitrators acted in manifest disregard of the law"); Stroh Container Co. v. Delphi Indus., Inc.,783 F.2d 743, 750 (8th Cir. 1986) ("We need not decide, however, whether to adopt any of these exceptions [including manifest disregard] since, under any one of them, the award must nevertheless be affirmed."); MSP Collaborative Developers v. Fidelity & Deposit Co. of Md., 596 F.2d 247, 251 (7th Cir. 1979); Parsons & Whittemore Overseas Co. v. Societe Generale de l'Industrie du Papier (RAKTA), 508 F.2d 969, 977 (2d Cir. 1974); Nat'l R.R. Passenger Corp., 551 F.2d at 143 ("Assuming without deciding that in an appropriate case an arbitration award may be vacated for a 'manifest disregard' of applicable law, this is clearly not such a case."). Some circuits continued to maintain the exclusivity of the statutory grounds, in the face of Wilko, for decades. See, e.g., Robbins v. Day, 954 F.2d 679, 684 (11th Cir. 1992). However, despite its uncertain genesis, most circuits eventually accepted manifest disregard of the law as a valid extrastatutory ground for vacatur. See note 3, above.

We were among the very last to adopt manifest disregard. After Wilko, three of our opinions iterated our viewpoint that the statutory grounds are exclusive. See McIlroy, 989 F.2d at 820 n.2; R.M. Perez & Assocs., Inc. v. Welch, 960 F.2d 534, 539-40 (5th Cir. 1992); Forsythe Int'l, S.A. v. Gibbs Oil Co. of Tex., 915 F.2d 1017, 1020 (5th Cir. 1990) ("judicial review of a commercial arbitration award is limited to Sections 10 and 11 of the Federal Arbitration Act"). But in Williams v. CIGNA, nearly fifty years after Wilko, we finally embraced manifest disregard as a nonstatutory ground for vacating arbitration awards. 197 F.3d at 759. We concluded that the departure from precedent was necessary and justified in the light of the Supreme Court's opinion in First Options of Chicago,

Inc. v. Kaplan, which cited 9 U.S.C. § 10 and Wilko for the proposition that courts will set arbitration awards aside "only in very unusual circumstances." 514 U.S. 938, 942 (1995).

## III.

## A.

The question before us now is whether, under the FAA, manifest disregard of the law remains valid, as an independent ground for vacatur, after Hall Street. The answer seems clear. Hall Street unequivocally held that the statutory grounds are the exclusive means for vacatur under the FAA. Our case law defines manifest disregard of the law as a nonstatutory ground for vacatur. See Kergosien, 390 F.3d at 353; Prestige Ford, 324 F.3d at 395; Harris v. Parker Coll. of Chiropractic, 286 F.3d 790, 792 (5th Cir. 2002). Thus, to the extent that manifest disregard of the law constitutes a nonstatutory ground for vacatur, it is no longer a basis for vacating awards under the FAA.

Four other circuits have considered this issue. The First Circuit, in dictum and with little discussion, concluded that Hall Street abolished manifest disregard of the law as a ground for vacatur.[4] See Ramos-Santiago v. United Parcel Serv., 524 F.3d 120, 124 n.3 (1st Cir. 2008) ("We acknowledge the Supreme Court's recent holding in Hall Street Assocs., L.L.C. v. Mattel that manifest disregard of the law is not a valid ground for vacating or modifying an arbitral award in cases brought under the [FAA]." (citations omitted)). The Sixth Circuit, in an unpublished opinion, reached the opposite conclusion by narrowly construing the holding of Hall Street to apply only to contractual expansions of the grounds for review. Coffee Beanery, Ltd. v. WW, L.L.C., 300

---

[4] This conclusion was dictum because the motion to vacate in Ramos-Santiago was not brought pursuant to the FAA. The Supreme Court in Hall Street was careful to limit its holding to the FAA and the scope of expeditious judicial review permitted thereunder: "we do not purport to say that [§§ 10 and 11] exclude more searching review based on authority outside the [FAA]." 128 S.Ct. at 1406.

Fed. Appx. 415, 418-19 (6th Cir. 2008). The Second Circuit has also held that manifest disregard survives Hall Street. Stolt-Nielsen SA v. AnimalFeeds Int'l Corp., 548 F.3d 85, 93-95 (2d Cir. 2008). The court, however, recognized that Hall Street's holding was in direct conflict with the application of manifest disregard as a nonstatutory ground for review, but resolved the conflict by recasting manifest disregard as a shorthand for § 10(a)(4). Id. Finally, the Ninth Circuit has concluded that Hall Street did not abolish manifest disregard because its case law defined manifest disregard as shorthand for § 10(a)(4). See Comedy Club Inc. v. Improv West Assocs., 553 F.3d 1277, 1290 (9th Cir. 2009) ("Comedy Club II"). We now turn to discuss the opinions of the Sixth, Second, and Ninth Circuits.

1.

Coffee Beanery only briefly considered the effect of Hall Street on manifest disregard of the law. 300 Fed. Appx. at 418-19. In what we view as an understatement, the Sixth Circuit acknowledged that Hall Street "significantly reduced the ability of federal courts to vacate arbitration awards for reasons other than those specified in 9 U.S.C. § 10 . . . ." Id. at 418. Citing Hall Street's discussion of Wilko, which Coffee Beanery thought demonstrated a "hesitation to reject the 'manifest disregard' doctrine," and noting the acceptance of the standard by each and every court of appeals, the court concluded that it would be imprudent to cease vacating arbitration awards made in manifest disregard of the law. Id. at 419.

This decision suffers from two significant flaws. First, the opinion utterly fails to address Hall Street's express holding that the grounds for vacatur found in § 10 are exclusive. Instead, the court narrowly construed Hall Street as applying only to contractual expansions of the grounds for vacatur. Id. In the light of Hall Street's repeated statements that "We hold that the statutory

grounds are exclusive," we think it incorrect so narrowly to construe Hall Street's holding. 128 S.Ct. at 1400 (emphasis added).

Second, we believe that Coffee Beanery misread Hall Street's discussion of Wilko. We do not see hesitation by Hall Street to reject manifest disregard of the law as an independent ground for vacating an award under the FAA; instead, Hall Street's discussion of Wilko demonstrates the Supreme Court's unwillingness to give any significant meaning to Wilko's vague language. Hall Street observed that Wilko dealt with an entirely separate issue and, noting the vagueness of Wilko's statement, concluded that: "When speaking as a Court, we have taken the Wilko language as we found it, without embellishment, and now that its meaning is implicated, we see no reason to accord it the significance that [the petitioner] urges." Id. at 1404.

2.

Unlike Coffee Beanery, the Second Circuit in Stolt-Nielsen did not shy from Hall Street's holding. The court acknowledged that Hall Street "held that the FAA sets forth the 'exclusive' grounds for vacating an arbitration award." Stolt-Nielsen, 548 F.3d at 94. The court also recognized that this holding was in conflict with its own prior statements regarding manifest disregard, which the court discounted as dicta. Id. ("[Hall Street's] holding is undeniably inconsistent with some dicta by this Court treating the 'manifest disregard' standard as a ground for vacatur entirely separate from those enumerated in the FAA."). Instead of directly concluding that Hall Street eliminated manifest disregard as a ground for vacatur under the FAA, the court reasoned that manifest disregard of the law should be "reconceptualized as a judicial gloss on the specific grounds for vacatur enumerated in section 10 of the FAA . . . ." Id.

Describing its "reconceptualization," the court stated:

> We must therefore continue to bear the responsibility to vacate arbitration awards in the rare instances in

13

which "the arbitrator knew of the relevant [legal] principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it." Westerbeke, 304 F.3d at 217. At that point the arbitrators have "failed to interpret the contract at all," Wise, 450 F.3d at 269, for parties do not agree in advance to submit to arbitration that is carried out in manifest disregard of the law. Put another way, the arbitrators have thereby "exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C § 10(a)(4).

Stolt-Nielsen, 548 F.3d at 95. Thus, the court seems to conclude that manifest disregard–as the court describes it–does not add to the statutory grounds. The court simply folds manifest disregard into § 10(a)(4).[5] In the full context of the Second Circuit's reasoning, this analysis is not inconsistent with Hall Street's speculation that manifest disregard may, among other things, "have been shorthand for § 10(a)(3) or § 10(a)(4) . . . ." Hall Street, 128 S.Ct. at 1404.

We should be careful to observe, however, that this description of manifest disregard is very narrow. Because the arbitrator is fully aware of the controlling principle of law and yet does not apply it, he flouts the law in such a manner as to exceed the powers bestowed upon him. This scenario does not include an erroneous application of that principle.[6]

3.

---

[5] The court relies heavily upon the Seventh Circuit's decision in Wise v. Wachovia Securities, LLC, which noted that the Seventh Circuit has defined manifest disregard "so narrowly that it fits comfortably under the first clause of the fourth statutory ground." 450 F.3d 265, 268 (7th Cir. 2006).

[6] Stolt-Nielsen cites New York Telephone Co. v. Communications Workers of America Local 1100, 256 F.3d 89 (2d Cir. 2001) (per curiam), as one example. In that case, the arbitrator deliberately refused to apply a legal principle that he acknowledged to be controlling. The arbitrator stated: "Perhaps it is time for a new court decision." New York Telephone Co., 256 F.3d at 93.

Comedy Club II has a lengthy procedural history. In a decision issued prior to Hall Street, the Ninth Circuit found that the arbitration award at issue constituted a manifest disregard of the law. Comedy Club Inc. v. Improv West Assocs., 514 F.3d 833 (2008) ("Comedy Club I"). The Supreme Court then vacated the decision in Comedy Club I and remanded for reconsideration in the light of its recently issued decision in Hall Street. Improv West Assocs. v. Comedy Club, Inc.,129 S.Ct. 45 (2008).

On remand, the Ninth Circuit, unlike the Second Circuit, had no need to reconceptualize manifest disregard because its own case law had already defined it as a shorthand for § 10(a)(4). Comedy Club, 553 F.3d at 1290. The court therefore held that manifest disregard of the law, as a shorthand for § 10(a)(4), survived Hall Street. Id. ("manifest disregard of the law remains a valid ground for vacatur because it is a part of § 10(a)(4)").

### B.

In the light of the Supreme Court's clear language that, under the FAA, the statutory provisions are the exclusive grounds for vacatur, manifest disregard of the law as an independent, nonstatutory ground for setting aside an award must be abandoned and rejected. Indeed, the term itself, as a term of legal art, is no longer useful in actions to vacate arbitration awards. Hall Street made it plain that the statutory language means what it says: "courts must [confirm the award] unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title," 9 U.S.C. § 9 (emphasis added), and there's nothing malleable about "must," Hall Street, 128 S.Ct. at 1405. Thus from this point forward, arbitration awards under the FAA may be vacated only for reasons provided in § 10.

To the extent that our previous precedent holds that nonstatutory grounds may support the vacatur of an arbitration award, it is hereby overruled.

### IV.

The district court, which issued its opinion before Hall Street, held that the arbitrators in this case manifestly disregarded the law. The judgment of the district court is therefore VACATED. The court, however, did not consider whether the grounds asserted for vacating the award might support vacatur under any of the statutory grounds. Accordingly, we REMAND for further consideration not inconsistent with this opinion. The judgment of the district court is VACATED and the case REMANDED.

VACATED and REMANDED.