# NO. 12-16-00340-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *DOTCOM LTD CO D/B/A DOTCOM LTD (ALSO KNOWN AS DOTCOM INTERNET SERVICES) AND PETER FERNANDEZ,* | § | *APPEAL FROM THE 159TH* |
| *APPELLANTS* | § | *JUDICIAL DISTRICT COURT* |
| *V.* | | |
| *DP SOLUTIONS, INC.,* | § | *ANGELINA COUNTY, TEXAS* |
| *APPELLEE* | | |

## *MEMORANDUM OPINION*

Appellants, Dotcom Ltd. Co. d/b/a Dotcom Ltd, also known as Dotcom Internet Services, (hereinafter Dotcom) and Peter Fernandez (Fernandez), appeal from a judgment confirming an arbitration award in favor of DP Solutions, Inc. (DP). In five issues, Appellants claim that the trial court erred in confirming the award because (1) the arbitrator exceeded his authority, (2) the arbitrator's failure to disclose a relationship with opposing counsel's family denied Appellants a neutral arbitrator, (3) the arbitrator demonstrated evident partiality to DP, (4) the arbitrator based the award on facts and factors not presented at arbitration, and (5) the arbitrator refused to allow Appellants adequate time to study and interpret relevant information late produced by DP. We affirm the judgment confirming the award.

## BACKGROUND

In late 2005, Fernandez contacted DP to "explore a mutually beneficial relationship between Dotcom and DP[.]" Both companies were in the internet dial up business. DP was in the Lufkin market and Dotcom was in the Nacogdoches market. DP agreed to sell its dial up customers to Dotcom. The parties signed three contracts. The first was a confidentiality agreement entered into by Fernandez and DP on February 9, 2006. Dotcom and DP entered into

a professional services agreement (PSA) on February 25. The third agreement was the personal guaranty of Fernandez, also signed February 25.

This dispute arises from the parties' conflicting interpretations of Section 16 of the PSA. Section 16 provides in relevant part, as follows:

> Initial Scope.
> The initial scope of this agreement shall be for DPS staff to work with Client to migrate approximately 1042 users from Internet Unlimited's Platipus Database to Client's Platipus Database. Successful migration of users should be accomplished within (7) days [of] the signing of this document. At that point, client should be fully capable of functioning with the INU users dialing into Client's infrastructure. Client shall be responsible for ensuring adequate authentication or PRI's for INU users to dial into the Client's as well as appropriate infrastructure requirements on Client's network and servers.

In consideration of the transfer of the dial up customers to Dotcom by DP, Dotcom agreed to pay $8,000 per month for eighteen months and a payment of $11,500 for DP's continued provision of connectivity to the customers during the March 2006 transition period.

Included as Exhibit "A" to the PSA was an addendum describing the transaction and setting forth the applicable dispute resolution procedure. The addendum provided for binding arbitration pursuant to the Federal Arbitration Act., 9 U.S.C. ch. 1, *et seq*. The arbitration clause provided that the "arbitrator shall within sixty days of the conclusion of the last mediation session render a written order and award in arbitration."

Shortly after entering into the contract, Appellants fell behind on the payments under the contract. Appellants indicate that they temporarily stopped making the payments under the contract because instead of the approximately 1,042 users promised by DP, DP only delivered 700 active customers. They claim to have resumed payments at a reduced rate of $4,000 per month. In total, Appellants claim they made payments to DP in the amount of $85,251.

On February 18, 2010, DP filed suit alleging various causes of action arising from Appellants' failure to make the payments under the contract. Appellants filed counterclaims alleging breach of contract, fraud, negligent misrepresentation, and promissory estoppel.

The interpretation of section 16 of the contract was the primary source of the parties' dispute. Appellants insisted that it contained DP's promise to deliver 1,042 INU users. DP argues that the paragraph merely defined the scope of initial work to be accomplished within a specified time and required Appellants to have all the infrastructure in place.

2

The dispute was submitted to mediation. Within twenty days of the first failed mediation on August 8, 2014, DP sent notice to Appellants of its intent to refer the dispute to arbitration in accordance with their arbitration agreement and filed a motion to compel arbitration on August 12. After numerous delays, the matter was called for a final arbitration hearing on July 8, 2016 before Arbitrator Robert Black. Dotcom's counsel selected Black.

On July 27, 2016, Black issued an award in favor of DP. Black's award included the following findings:

a.     There was no breach of contract by DP;

b.     The contract is unambiguous and contains a merger clause supported by consideration;

c.     Dotcom and Fernandez fell behind on payments under the contract soon after entering into the contract;

d.     The contract was based in part upon the transfer of "approximately 1,042 users" from DP to Dotcom;

e.     The term "approximately" is clear and unambiguous;

f.     The "Points of Presence Chart" does not specify between active and inactive users;

g.     Even if the contract was ambiguous and thus open to the interpretation, based upon parole evidence, that 1,042 active customers were required to be transferred to Dotcom, Appellants could still not prevail as Dotcom and Fernandez offered no reliable proof in support of their counterclaims that some number other than 1,042 users were ultimately transferred[;]

h.     Dotcom and Fernandez based much of their defense to the arbitration proceeding on calculations performed by Fernandez based upon unverified assumptions made by Fernandez on the number of the active customers and assumed payment rates;

i.     Numerous inconsistencies and discrepancies were revealed on cross examination in the calculations and data utilized by Dotcom and Fernandez to support Appellants' position to the point that no reasonable person could conclude the data had any reliability;

j.     A prudent business owner would have brought the alleged deficiencies in the number of customers to the attention of DP soon after discovery by Dotcom and Fernandez;

k.     Dotcom and Fernandez failed to bring any alleged deficiencies in the number of customers to the attention of DP for many months after entering into the contract; and

l.     Such failure by Dotcom and Fernandez supports a finding that any alleged deficiencies in the number of customers was not a primary concern of Dotcom and Fernandez until such deficiencies were ultimately asserted as a basis for avoiding payment obligations on the contract years later.

Appellants raised, in their Response and Motion to Vacate, three issues for the first time. The same three issues were the basis for Appellants' Motion for New Trial and their appeal. The new grounds asserted after the entry of the adverse award were (1) Black lacked authority/jurisdiction to enter the award because it was not entered within sixty days of the last failed mediation session; (2) the court should vacate the award because Black displayed evident partiality to DP; and (3) the court should vacate the award because Black did not grant a third continuance of the arbitration hearing despite the existence of good cause.

The trial court signed an order confirming the award on September 30, 2016. This appeal followed.

<u>ARBITRATOR'S AUTHORITY</u>

In issue one, Appellants contend that Black had no authority to enter an award because the parties' contract limited Black's power to issue an award to the sixty day period following the last failed mediation session.

**<u>Standard of Review</u>**

A court's review of the arbitration process is extremely limited. *See CVN Grp., Inc. v. Delgado*, 95 S.W.3d 234, 238 (Tex. 2002). An appellate court reviews a trial court's confirmation of an arbitration award de novo. *See id*. However, the review of the underlying award is extremely deferential. *See id*. A court should indulge all reasonable presumptions in favor of the award and none against it. *Id*. "[E]stablished law ordinarily precludes a court from resolving the merits of the parties' dispute on the basis of its own factual determinations, no matter how erroneous the arbitrator's decision." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 511, 121 S. Ct. 1724, 1729, 149 L. Ed. 2d 740 (2001).

**<u>Applicable Law</u>**

Substantive arbitrability questions – which courts decide – address the existence, enforceability, and scope of an agreement. *G.T. Leach Builders, LLC v. Sapphire V.P., L.P.*, 458 S.W.3d 502, 520-21 (Tex. 2015). Procedural arbitrability questions address the construction and application of limits to that agreement. *Id*. at 521. Only arbitrators can decide questions of procedural arbitrability. *Id*. These procedural matters include the satisfaction of "prerequisites such as time limits, notice, laches, estoppel, and other preconditions to an obligation to arbitrate." *Id*. (quoting *BG Group, PLC v. Republic of Arg*., __ U.S. __, 134 S. Ct. 1198, 1206-07, 188 L. Ed. 2d 220 (2014)).

Absent clear contractual language to the contrary, the time deadlines for the arbitrator to enter an award are directional in nature rather than a mandatory jurisdictional requirement. *See Int'l Assoc. of Machinist v. Mooney Aircraft, Inc.*, 410 F.2d 681, 682-83 n.4 (5th Cir. 1969); *see also Int'l Bank of Commerce-Brownsville v. Int'l Energy Dev. Corp.*, 981 S.W.2d 38, 41 (Tex. App.—Corpus Christi 1998, pet. denied). If the arbitration agreement does not state that the time limits governing the arbitration proceeding are jurisdictional in nature, the arbitration

award cannot be vacated on the ground that it was untimely rendered unless the moving party challenged the arbitrator's jurisdiction prior to the entry of the adverse award. *See Mooney Aircraft*, 410 F.2d at 682-83, n.4.

## Discussion

The arbitration agreement in the instant case contains no language indicating that the time limits in the agreement were jurisdictional in nature. Appellants were thus required to bring any objection to the timeliness of the award prior to the entry of an adverse award or such objection is waived. *See id*. Appellants admitted to the trial court that they did not challenge Black's authority to proceed to a final determination until after the entry of the adverse award. By failing to object to until after the final award was made, Appellants waived their complaint. *See id*. Issue one is overruled.

## PARTIALITY

In their second issue, Appellants maintain that the trial court erred in entering judgment on the arbitration award because Black failed to disclose the relationship between himself and DP's counsel. They argue that this failure denied Dotcom the ability to select a fair and impartial arbitrator.

## Applicable Law

On the application of a party, a court shall vacate an award if the rights of a party were prejudiced by evident partiality of an arbitrator appointed as neutral arbitrator. TEX. CIV. PRAC. & REM. CODE ANN. 171.088(a)(2)(A) (West 2011). A neutral arbitrator selected by the parties' exhibits evident partiality if he "does not disclose facts which might, to an objective observer, create a reasonable impression of the arbitrator's partiality." *Burlington N.R.R. Co. v. Tuco, Inc*., 960 S.W.2d 629, 636 (Tex. 1997). "Evident partiality is established from the nondisclosure itself, regardless of whether the nondisclosed information necessarily establishes partiality or bias." *Id*.

The party asserting evident partiality of an arbitrator has the burden of proof, and the alleged partiality must be direct, definite, and capable of demonstration rather than remote uncertain and speculative. *Int'l Energy Dev. Corp*., 981 S.W.2d at 44. The claimant must establish specific facts that indicate improper motives on the part of the arbitrator. *Id*. A relationship between an arbitrator and a party "must be ongoing and direct rather than

5

speculative and remote" in order to support a claim of arbitrator partiality. ***Id***. at 46. A party who knows or has reason to know of an arbitrator's alleged bias, but remains silent pending the outcome of the arbitration waives the right to complain." ***Skidmore Energy v. Maxus (U.S.) Expl. Co***., 345 S.W.3d 672, 684 (Tex. App.—Dallas 2011, pet. denied). "A party may not sit idly by during an arbitration procedure and then collaterally attack that procedure on grounds not raised before the arbitrator when the result turns out to be adverse." ***Id***. (quoting ***Bossley v. Mariner Fin. Group, Inc***., 11 S.W.3d 349, 351-52 (Tex. App.—Houston [1st Dist.] 2000), aff'd by 79 S.W.3d 30 (Tex. 2002)).

**Discussion**

Black, a former President of the State Bar of Texas, was chosen as arbitrator at the instance of Dotcom's counsel. Appellants claim that during a break in the arbitration proceedings, Black disclosed that he had known the family of DP's counsel, Curt Fenley, III, personally and professionally for many years. A discussion ensued between Black and Fenley about the Fenley family history. Appellants claim that Black said he had known the Fenley family since the founding of the firm. The conversation took place in the presence of all parties and counsel.

According to DP, the conversation occurred during a short break in the proceedings in the Fenley Law Office. It was prompted by Black's inquiry about the identity of the persons in the portraits on the wall of the Fenley firm. In his affidavit, Black denied having ever met Curtis Fenley, Sr. or Curtis Fenley, Jr. He further stated that during his thirty six years of practice, he had never set foot in the offices or the conference room where the arbitration took place.

Appellants admit, before the entry of the arbitration award, they learned of the reasons now asserted as the basis for their allegation of bias. They did not raise an objection of evident partiality until after the arbitration award. Appellants waived the right to complain of evident partiality. *See **Skidmore***, 345 S.W.3d at 684.

Even if Appellants had not waived their complaint, the facts alleged as undisclosed by Black are too trivial to cause a reasonable person to question Black's partiality. *See **Int'l Energy Dev. Corp***., 981 S.W.2d at 44. They were not denied the ability to select an impartial arbitrator. Appellants' second issue is overruled.

6

**ARBITRATOR'S BIAS**

In their third issue, Appellants urge that Black's bias is shown by his rulings regarding discovery and his interpretation of the contract.

## Applicable Law

Arbitrators have almost unlimited determinative powers when acting upon matters properly under submission. 6 C.J.S. Arbitration § 101 (2017). This includes the power to decide questions of law and fact which arise in the consideration of matters embraced in the agreement or submission. *Id*. "Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement." *Garvey*, 532 U.S. at 509, 121 S. Ct. 1728. When an arbitrator resolves contractual disputes and dishonesty is not alleged, the arbitrator's improvident, or even silly, fact finding does not provide a basis for a reviewing court to refuse to enforce the award. *Kergosien v. Ocean Energy, Inc*., 390 F.3d 346, 358 (5th Cir. 2004), *rev'd on other grounds by Citigroup Global Mkts, Inc*., 562 F.3d 349 (5th Cir. 2009). The failure of an arbitrator to correctly apply the law is not a basis for setting aside an arbitrator's award. *Id*. at 356. "[A]rbitrators have almost unbridled discretion regarding discovery[.]" *Perry Homes v. Cull*, 258 S.W.3d 580, 599 (Tex. 2008).

## Discussion

Appellants allege that Black's partiality was shown when he took no action against DP for its two year delay in producing the original Platipus customer billing database. However, as evidence by the arbitration award, Appellants eventually received the database and used its information in its presentation to Black.

Appellants further contend that evident partiality was shown by Black's consideration of those portions of the agreement favorable to DP while ignoring those provisions which would have shown DP's failure to comply with the contract. Specifically, they complain that Black ignored the express limits on his own power. This is essentially the same question previously addressed and rejected in issue one.

Appellants also complain of Black's finding that the contract was unambiguous, and that DP did not warrant the transfer of 1,042 users. Nevertheless, Black further found that, even if DP had warranted 1,042 users, Dotcom's various estimates of how many customers were

7

actually transferred revealed "so many discrepancies, error, and omissions" that no reasonable person could rely on them.

Additionally, Appellants cite generally Black's "failure to consider evidence in support of Dotcom's affirmative defenses and counterclaims" as evidence of his partiality. Appellants accuse Black of partiality "shown by his excusing DP's false testimony, excusing DP's thwarting of the discovery process, and in interpreting the contract to contain only terms favorable to DP and ignoring those that would show a breach by DP or limited the power of the arbitrator to decide this case."

In entering the arbitration agreement, the parties bargained for a streamlined proceeding and an expeditious and final result. To achieve this, the arbitrator is given broad discretion to construe the agreement, weigh the evidence, find the facts and apply the law. The arbitrator's rulings, findings and conclusions are bound to vary from those urged by the losing party. Therefore, adverse contractual interpretations, discovery rulings, findings of fact, or conclusions of law cannot, without more, serve as proof of evident partiality. Otherwise, every award would be subject to challenge on this basis. The expeditious handling and finality for which the parties agreed to arbitration would frequently be frustrated. The arbitration award in this case shows that Black carefully considered and evaluated Appellants' interpretation of the contract. In rejecting Appellants' interpretation, Black explained in detail that, even if Appellants' interpretation of the contract was accepted, they would still not prevail.

Finally, Appellants allege that "[t]he late allowance of DP to take the deposition of Kyle Parrish denied Dotcom a copy of the video transcript at arbitration, even though DP was allowed to play the video at arbitration." The parties agree that Parrish's deposition was taken by video teleconference on June 30, 2016, in accord with an agreed order signed by Black. DP maintains that no "video" was produced and Appellants never requested a video of the deposition. No video was played at arbitration. Nor does the record indicate that the deposition was recorded. The arbitration award states that Parrish was called to testify by deposition, which demonstrates that the parties used at least portions of the transcript at the arbitration hearing. Appellants do not explain how Black's approval of an agreed order for a teleconference deposition of Parrish demonstrates evident partiality. Appellants do not allege that Black possessed an improper motive in signing the agreed order. Nor do Appellants explain how it was harmed by the timing of the deposition.

For all of the above reasons, we conclude no evident partiality was shown. *See*
***Kergosien***, 390 F.3d at 358; *see also **Perry Homes***, 258 S.W.3d at 599.  Issue three is overruled.


## WAS THE AWARD BASED ON EVIDENCE NOT PRESENTED

In its fourth issue, Appellants contend that Black "based the award on facts and factors
not presented during arbitration[.]"  As evidence of Black's reliance on unpresented facts, they
point to the following footnote in the thirteen page arbitration award:

> Fernandez's math assumptions illustrate that the purchase was doomed from the start.  They
> ignore the rate at which dial-up customers switched to DSL.  The contract at its core was a bet on
> the rate of obsolescence of dial-up.  It occurred much faster than Peter Fernandez must have
> projected.

According to DP, several witnesses testified during arbitration about the failing dial-up
market. DP points out that Appellants have offered no evidence to support their allegation that
these facts were not presented to Black.  DP also argues that nothing in the final arbitration
award indicates that Black based the award on his observations in the footnote. Appellants argue
that the observations in the footnote show that Black based the award on "invent[ed] facts" not
presented at the arbitration hearing.

However, they have presented no evidence to support the assertion that Black heard no
evidence regarding the declining dial-up business.  DP insists that several witnesses testified
during arbitration about the failing dial-up market and the migration of customers to newer types
of service. But, we have not been provided a record of the testimony at the arbitration hearing.
When error cannot be demonstrated, an award must be presumed correct.  ***Nafta Traders, Inc. v.
Quinn***, 339 S.W.3d 84, 102 (Tex. 2011).  Moreover, a decision under review is presumed correct
on matters where the record is silent.  *See **id**.* at n.81. Because there is no record in this case, we
must presume Black acted correctly.  *See **id**.* Issue four is overruled.


## ARBITRATOR'S FAILURE TO ALLOW ADEQUATE TIME TO ANALYZE DATA

In issue five, Appellants complain that the trial court erred in entering judgment on the
arbitration award because Black permitted DP to late produce Gigabytes of relevant information,
but refused to allow Appellants adequate time to make use of the information. Appellants argue
that although requested in 2014, DP did not produce a copy of the Platipus customer and billing

database until May 19, 2016. Appellants claim they were required to locate discontinued software required to make use of the 16 Gigabyte file. More time was needed to secure the temporary licensing agreements necessary to activate the software so that Appellants could access the data. Appellants insist this left it insufficient time to fully analyze the data or to secure the help of an expert.

Appellants conceded in the trial court that Black granted two continuances of the arbitration hearing so that Appellants might conduct additional discovery regarding the Platipus customer database. On July 8, 2016, Appellants announced ready to proceed with the final arbitration hearing. The record indicates that Appellants did not request a continuance of the July 8, 2016 hearing. On appeal, Appellants' complaint is essentially that Black denied them relief that they did not ask Black to grant. Appellants explain that it would have been futile to ask for another continuance because Black had stated that he would grant no more continuances. Nevertheless, a motion for continuance must be in writing, state the specific facts supporting the motion, and be verified or supported by affidavit. *Serrano v. Ryan's Crossing Apts*., 241 S.W.3d 560, 564 (Tex. App.—El Paso 2007, pet. denied). Appellants' failure to request a continuance in writing and obtain a ruling thereon waived error. *See* TEX. R. APP. P. 33.1(a). Issue five is overruled.

## DISPOSITION

Having overruled all Appellants' issues, the judgment of the trial court is *affirmed*.

**BILL BASS**
Justice

Opinion delivered July 31, 2017.
*Panel consisted of Worthen, C.J., Neeley, J., and Bass, Retired J., Twelfth Court of Appeals, sitting by assignment.*

(PUBLISH)

10



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

### JULY 31, 2017

### NO. 12-16-00340-CV

### DOTCOM LTD CO D/B/A DOTCOM LTD (ALSO KNOWN AS DOTCOM INTERNET SERVICES) AND PETER FERNANDEZ,
Appellants
V.
### DP SOLUTIONS, INC.,
Appellee

Appeal from the 159th District Court

of Angelina County, Texas (Tr.Ct.No. CV-42935-10-02)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the Appellants, **DOTCOM LTD CO D/B/A DOTCOM LTD (ALSO KNOWN AS DOTCOM INTERNET SERVICES) AND PETER FERNANDEZ,** for which execution may issue, and that this decision be certified to the court below for observance.

Bill Bass, Justice.
*Panel consisted of Worthen, C.J., Neeley, J. and Bass, Retired J., Twelfth Court of Appeals, sitting by assignment.*