IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| AUTO EQUITY LOANS OF DELAWARE, LLC, and DAVID LEVI, | § § § § | No. 438, 2019 |
| Petitioners Below, Appellants, | § § § | |
| v. | § § | Court Below—Superior Court of the State of Delaware |
| JOSEPH BAIRD, ALTON GRIFFIN, and JEANNINE MEDORA, | § § § | |
| Respondents Below, Appellees. | § § § | C.A. No. N18A-08-001 |

Submitted: April 8, 2020
Decided: May 27, 2020

Before **SEITZ**, Chief Justice; **VALIHURA**, and **TRAYNOR**, Justices.

## ORDER

This 27th day of May, 2020, having considered the briefs and the record below, it appears to the Court that:

(1)     Three Pennsylvania residents traveled to Delaware and agreed to high-interest loans using their cars as collateral.  During the loan repayment periods, the borrowers invoked the loan agreements' arbitration provisions.  They claimed that the loan agreements were usurious under Pennsylvania law.  The lender countered that Delaware law applied, and under Delaware law the loan agreements were not

usurious. The arbitrator decided to apply Pennsylvania law, declared the loans usurious, and awarded damages. The lender sought to vacate the arbitration awards in the Delaware Court of Common Pleas. According to the lender, the arbitrator "manifestly disregarded the law"—one of the standards that must be met to vacate the arbitration awards. The Court of Common Pleas agreed with the lender and vacated two of the awards, but for an unknown reason it did not vacate the third award. After further appeals to the Superior Court, the Superior Court reversed and reinstated the two vacated awards. According to the court, the arbitrator had some basis for applying Pennsylvania law, and thus had not manifestly disregarded the law. In this appeal we affirm the Superior Court's judgment. Although the arbitrator's and the Superior Court's choice of law analyses are doubtful, the lender chose arbitration and the difficult burden it must meet to vacate an arbitrator's award. We agree with the Superior Court that the lender did not meet its burden.

(2)     The facts and procedural history are undisputed. Joseph Baird, Alton Griffin, and Jeannine Medora (collectively, the "Borrowers") each entered into a high-interest loan agreement with Auto Equity Loans of Delaware, LLC (together with its member David Levi, "AEL"). The Borrowers are Pennsylvania residents who each viewed an AEL internet advertisement while in Pennsylvania. The Borrowers responded to the advertisements by telephoning AEL. AEL told the

2

Borrowers they had to travel to an AEL office to apply for a loan. AEL has offices in Delaware but has no offices in Pennsylvania.

(3) From 2014 to 2016, the Borrowers each traveled to AEL's Wilmington, Delaware office and entered into at least one loan agreement with AEL.[1] Each loan agreement provides that Delaware law governs the agreement. The agreements also require certain disputes arising from the agreements be resolved through arbitration instead of litigation. If arbitration occurs, it must take place in Delaware and is governed by the Federal Arbitration Act. After executing their loan agreements, the Borrowers received their loans on the spot in AEL's Delaware office. The Borrowers' Pennsylvania-titled cars served as collateral.

(4) During the loan repayment periods, the Borrowers each demanded arbitration against AEL. The Borrowers argued that Pennsylvania law applies to the loan agreements and asserted the same four claims: (1) unconscionability; (2) usury under Pennsylvania law;[2] (3) violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL");[3] and (4) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO").[4] Medora and Baird also

---

[1] From 2014 to 2016, Baird entered into a series of loans that totaled $2,025.00 at approximately 180% A.P.R.; in 2015, Griffin entered into a loan for $3,590.00 at 121.67% A.P.R.; and in 2016, Medora entered into a loan for $390.00 at 243.35% A.P.R.
[2] 41 P.S. §§ 101-605.
[3] 73 P.S. §§ 201-1-201-9.3.
[4] 18 U.S.C. § 1962(c).

asserted a claim under the Truth in Lending Act ("TILA").[5]  Medora and Griffin

later withdrew their unconscionability claims.  Medora also later withdrew her

UTPCPL and RICO claims.

(5)     After evidentiary hearings, the arbitrator decided that Pennsylvania, not

Delaware, substantive law applied to the loan agreements.  The arbitrator recognized

that, earlier, "in a similar case deciding the same legal issue, [he] held that Delaware

law applied."[6]  But, the arbitrator explained, three court decisions issued after his

earlier award—*Gregoria v. Total Asset Recovery, Inc.*,[7] *Salvatico v. Carbucks of

Delaware Inc.*,[8] and *Jaibur v. Auto Equity Loans of Delaware, LLC*[9]—caused him

to change his mind on the choice of law issue.  A fourth case, *Kaneff v. Delaware

Title Loans,* also informed the arbitrator's choice of law analyses.[10]  The four cases,

according to the arbitrator, involved a factual situation similar to those of the

Borrowers.    And,  as  he  interpreted  the  four  decisions,  each  court  applied

---

[5] 15 U.S.C. §§ 1601-1667f.  Baird and Griffin also asserted various claims under the Uniform Commercial Code that are not the subject of this appeal.
[6] App. to Opening Br. at A040-A041, A045, A050.  The arbitrator is likely referring to his arbitration award dated June 14, 2012.  App. to Answering Br. at B013-B015.  There, the arbitrator found that under Restatement (Second) Conflict of Laws § 187, Delaware had a materially greater interest in the loan transaction and the factors listed in Restatement (Second) Conflict of Laws § 188 weighed in favor of Delaware.  *Id.* at B014.
[7] 2015 WL 115501 (E.D. Pa. Jan. 8, 2015).
[8] No. 2006-00971 (Bucks Co. Ct. Com. Pl. Oct. 24, 2013); App. to Answering Br. at B016.
[9] No. 2015-08330 (Bucks Co. Ct. Com. Pl. June 30, 2016); App. to Answering Br. at B249.
[10] 587 F.3d 616 (3d Cir. 2009).

4

Pennsylvania, not Delaware, law. Once Pennsylvania law applied, the loan agreements were usurious. The arbitrator awarded damages to the Borrowers.

(6)     AEL sought review of the arbitrator's awards in the Delaware Court of Common Pleas.[11]  On cross-motions for summary judgment, AEL sought vacatur of the awards, and the Borrowers sought confirmation.  AEL claimed that the arbitrator manifestly disregarded the law when he applied Pennsylvania law to the loan agreements.  According to AEL, the arbitrator ignored the loan agreements' choice of law provisions, failed to conduct a proper choice of law analysis, and relied on inapposite case law.  The Court of Common Pleas undertook its own choice of law analysis under Restatement (Second) Conflict of Laws §§ 187-188.  It considered Pennsylvania's policy against usury, Delaware's policy of upholding freedom of contract, and Delaware's connections to the contract.[12]  It also reviewed the cases cited by the arbitrator and found them inapplicable.  The court concluded that "the arbitrator's choice-of-law analysis—to the extent he performed one—[was] clearly

---

[11] AEL initially filed in the Delaware Court of Chancery.  The Court of Chancery transferred the cases to the Court of Common Pleas under 10 *Del. C.* § 5702.  The Court of Common Pleas consolidated the cases.

[12]  The Court of Common Pleas concluded that of the contacts listed in § 188 of the Restatement, Delaware's contacts outweigh those of Pennsylvania.  App. to Opening Br. at A027-A028 ("The [Borrowers] traveled to Delaware and visited AEL's office in Delaware, signed the contract and pledged their Pennsylvania titled vehicles as collateral while at the Delaware location, and received the loan while at that Delaware location.").

erroneous"[13] because "an equitable choice-of-law inquiry would lead to the application of Delaware law."[14]

(7)    The Court of Common Pleas recognized that legal error was insufficient to vacate an arbitration award.  The court went a step further, however, and concluded that the arbitrator's legal error amounted to a manifest disregard of the law.  First, according to the court, the arbitrator relied on "inapplicable case law despite the extensive briefing by the parties regarding the appropriate analysis for a choice-of-law question."[15]  And second, the arbitrator had conducted a choice of law analysis under the Restatement in a prior factually-similar arbitration and found that Delaware law governed.  In the court's view, the arbitrator knew of the controlling law and willfully disregarded it.  The Court of Common Pleas vacated the Griffin and Medora awards.  For an unknown reason, the court did not vacate the Baird award.[16]

(8)    On appeal to the Superior Court, the court focused on the highly deferential standard of review for arbitration awards.  The court found in the record some support for Pennsylvania law to apply under the factors in Restatement § 188,[17]

---

[13] *Id.* at A032.

[14] *Id.* at A034.

[15] *Id.* at A033.

[16] Baird did not withdraw his unconscionability claim, which might explain the different treatment.

[17] App. to Opening Br. at A280 n.37 ("Arguably, Pennsylvania law could apply based on Pennsylvania's fundamental policy against usury and on interstate advertising, origin of payments, and location of the vehicles."); *see also id.* at A288 n.63.

6

federal and Pennsylvania case law,[18] and a Pennsylvania statute.[19]  Thus, according

to the Superior Court, the arbitrator had some support for his awards.  The court also

rejected what the Court of Common Pleas considered evidence of willfully

disregarding the law.  The court explained that, assuming the arbitrator's reliance on

*Kaneff*, *Gregoria*, *Salvatico*, and *Jaibur* amounted to legal error, at most it

demonstrated the arbitrator's misunderstanding of the law—an insufficient ground

for vacatur.  Further, the court credited the arbitrator's explanation that he changed

his choice of law analysis based on cases decided after his prior arbitration award.

According to the Superior Court, the arbitrator applied his understanding of current

law and had not manifestly disregarded the law.  The Superior Court reinstated the

Griffin and Medora awards and affirmed the Baird Award.  AEL appealed to our

Court.

(9)    We review decisions on cross-motions for summary judgment *de

novo*.[20]  A court's "review of an arbitration award is one of the narrowest standards

of judicial review in all of American jurisprudence."[21]  Limited circumstances

---

[18] *Id.* at 286 n.57 (noting that "arguably [*Kaneff*, *Gregoria*, *Salvatico*, and *Jaibur*] had sufficient similarities" to the Borrowers' cases).

[19] *Id.* at A288-A289 n.64 (noting that a Pennsylvania statute, 41 P.S. § 408, precludes waiver of the law against usury by any oral or written agreement).

[20] *See SPX Corp. v. Garda USA, Inc.*, 94 A.3d 745, 750 (Del. 2014).

[21] *Id.* (quoting *TD Ameritrade, Inc. v. McLaughlin, Piven, Vogel Sec., Inc.*, 953 A.2d 726, 732 (Del. Ch. 2008)).

7

warrant vacatur of an arbitration award.[22]  Section 10 of the FAA, which AEL chose to govern the loan agreements, allows vacatur of an arbitration award only in the case of arbitral misconduct: "corruption," "fraud," "evident partiality," "misconduct," "misbehavior," and "exceed[ing] . . . powers."[23]  The only ground raised in this appeal for vacating the awards is that the arbitrator exceeded his powers.  As we have interpreted § 10 of the FAA, an arbitrator exceeds his powers when he acts in manifest disregard of the law.[24]  To act in manifest disregard of the law, the arbitrator must be "fully aware of the existence of a clearly defined governing principle but refuse[] to apply it, in effect, ignoring it."[25]  Like the other

---

[22] *See Genelux Corp. v. Roeder*, 143 A.3d 20, 2016 WL 3866609, at *1 (Del. July 6, 2016) (TABLE) (acknowledging that "vacatur is available only in a limited set of circumstances").

[23] *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 586 (2008) (quoting 9 U.S.C. § 10(a)).

[24] *See SPX Corp.*, 94 A.3d at 750.  In *Hall Street*, the Supreme Court held that FAA §§ 10 (vacatur) and 11 (modification) provide the exclusive grounds for judicial review of arbitration awards.  552 U.S. at 586.  *Hall Street* left open whether "manifest disregard" of the law (1) constitutes an additional judicially-created ground for vacatur—and is thus invalid; (2) "refers to the § 10 grounds collectively"; or (3) "is shorthand for § 10(a)(3) or § 10(a)(4), the paragraphs authorizing vacatur when the arbitrators were 'guilty of misconduct' or 'exceeded their powers.'"  *Id.* at 585.  Following *Hall Street*, circuit courts split on the validity of manifest disregard as a ground for vacatur.  *Compare Citigroup Global Mkts., Inc. v. Bacon*, 562 F.3d 349, 358 (5th Cir. 2009) ("[M]anifest disregard of the law as an independent, nonstatutory ground for setting aside an award must be abandoned and rejected."), *with Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1290 (9th Cir. 2009) ("We have already determined that the manifest disregard ground for vacatur is shorthand for a statutory ground under the FAA, specifically 9 U.S.C. § 10(a)(4), which states that the court may vacate 'where the arbitrators exceeded their powers.'").  *See* Leigh F. Gill, Note, *Manifest Disregard After Hall Street: Back From the Dead—The Surprising Resilience of a Non-Statutory Ground for Vacatur*, 15 Lewis & Clark L. Rev. 265, 271-80 (2011); MyLinda K. Sims & Richard A. Bales, *Much Ado About Nothing: The Future of Manifest Disregard After Hall Street*, 62 S.C. L. Rev. 407, 424-29 (2010).  For purposes of this appeal we have assumed that manifest disregard for the law is a ground for vacatur under federal law.

[25] *SPX Corp.*, 94 A.3d at 750 (quoting *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389 (2d Cir. 2003)).

grounds for vacating an arbitration award under the FAA, demonstrating that the arbitrator exceeded his powers is a steep hill to climb.[26] AEL must demonstrate "that the arbitrator (1) knew of the relevant legal principle, (2) appreciated that this principle controlled the outcome of the disputed issue, and (3) nonetheless willfully flouted the governing law by refusing to apply it."[27]

(10)   AEL argues once again on appeal that the arbitrator manifestly disregarded the law when he applied Pennsylvania law to the loan agreements. According to AEL, the arbitrator knew each loan agreement contained a Delaware choice of law provision, failed to conduct a choice of law analysis under §§ 187-188 of the Restatement, and relied on inapplicable case law. The Borrowers respond that the arbitrator acted within his powers when he relied on cases where the courts chose Pennsylvania law instead of Delaware law to govern similar loan agreements.

(11)   We agree with the Superior Court that the arbitrator did not manifestly disregard the law as that standard has been interpreted by our courts. First, as the Superior Court correctly noted, the arbitrator's awareness of the Delaware choice of law provision in the loan agreements "does not prove that the arbitrator 'knew of the relevant legal principle' or 'appreciated that this principle controlled the outcome of

---

[26] Or, in the words of the Court of Chancery, "a nearly vertical mountain." *Carl Zeiss Vision, Inc. v. Refac Holdings, Inc.*, 2017 WL 3635568, at *1 (Del. Ch. Aug. 24, 2017).

[27] *SPX Corp.*, 94 A.3d at 750 (quoting *Paul Green School of Rock Music Franchising, LLC v. Smith*, 389 Fed. Appx. 172, 177 (3d Cir. 2010)).

the dispute'" and disregarded it.[28]  Even with the Delaware choice of law provision in the loan agreements, under the Restatement, a contractual choice of law provision can be overridden by another state's public policy in certain circumstances.[29]

(12)  Second, although the arbitrator did not perform the Restatement's factor by factor analysis for the choice of law issue, he did explain his reasons for choosing Pennsylvania law and deviating from a prior award applying Delaware law. According to the arbitrator, three federal and state cases decided after his prior decision caused him to reevaluate his analysis.[30]  Although we agree with AEL that the cases relied on for the arbitrator's change of heart—*Gregoria*, *Salvatico*, and *Jaibur*—were slender reeds to support the outcome, questionable legal support or a misreading of the law alone are insufficient to vacate an arbitration award.[31]

(13)  After our review of the record, we agree with the Superior Court that AEL has not demonstrated "that the arbitrator (1) knew of the relevant legal principle, (2) appreciated that this principle controlled the outcome of the disputed

---

[28] *SPX Corp.*, 94 A.3d at 750-51.
[29] Restatement (Second) Conflict of Laws § 187(2)(b).
[30] App. to Opening Br. at A040-A041, A044-A045, A049-A050.
[31] AEL raises substantial arguments distinguishing the *Gregoria*, *Salvatico*, and *Jaibur* decisions. We note, however, that the cases involved Pennsylvania borrowers, Delaware lenders, and high-interest rate loan agreements.  Each case grappled with, even if on a preliminary basis, challenges to whether Delaware or Pennsylvania law applied to the agreements.

issue, and (3) nonetheless willfully flouted the governing law by refusing to apply it."[32]  Thus, the arbitrator did not act in manifest disregard of the law.[33]

NOW, THEREFORE IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ *Collins J. Seitz, Jr.*
Chief Justice

---

[32] *SPX Corp.*, 94 A.3d at 750 (quoting *Paul Green School of Rock Music*, 389 Fed. Appx. at 177).
[33] We note that, for the Baird award, AEL did not show that the arbitrator manifestly disregarded the law.  Thus, like the Superior Court, we affirm the Baird award.